THE STATE OF OHIO, APPELLEE, *v.* CONRAD, APPELLANT.

[Cite as State *v.* Conrad (1990), 50 Ohio St. 3d 1.]

(No. 88-1417—Submitted September 27, 1989—Decided March 21, 1990.)

*Michael Miller,* prosecuting attorney, and *Bonnie L. Maxton,* for appellee.

*Mary Jane McFadden, Melodee Siegel Kornacker* and *Catherine L. Worley,* for appellant.

SWEENEY, J. The deter-

minative issue posed in this appeal is whether the prosecutor's use of defendant's compelled testimony before the Senate committee, which testimony is immunized by R.C. 101.44, has tainted the indictment against defendant so as to compel its dismissal. For the reasons that follow, we answer this inquiry in the affirmative, thereby reversing the decision of the court of appeals below.

At the outset, it is abundantly clear that defendant's Senate testimony was provided use immunity pursuant to R.C. 101.44. This statutory section provides:

"Except a person who, in writing, requests permission to appear before a committee or subcommittee of the general assembly, or of either house thereof, or who, in writing, waives the rights, privileges, and immunities granted by this section, the testimony of a witness examined before a committee or subcommittee shall not be used as evidence in a criminal proceeding against such witness. This section does not exempt a witness from the penalties for perjury."

A careful review of the record reveals that defendant's testimony before the Senate committee was compelled, inasmuch as she was subpoenaed to appear before that committee, and that there is no indication that she waived the rights, privileges or immunities specifically accorded her testimony by virtue of R.C. 101.44. Given the language of this statute, it is clear that absent waiver, her Senate committee testimony should not have been used in any respect during the grand jury proceedings. R.C. 101.44 specifically directs that such waiver must be made in writing. Here, the state has failed to produce any writing signed by defendant which specifically purports to waive the immunity given her Senate committee testimony. While the state has produced several

waiver of rights forms that defendant signed before each of her appearances before the grand jury, none of these forms attempted to express a waiver of the statutory immunity given to her prior Senate committee testimony. A review of these forms reveals unmistakably that defendant waived only her Fifth Amendment right to remain silent before the grand jury, and such forms do not purport to act as a waiver of any prior testimony protected by R.C. 101.44. In sum, the waiver forms in issue make absolutely no mention of her statutory immunity or R.C. 101.44. Even if we were to give the state the benefit of the argument that the grand jury waiver forms could have waived the immunity granted to the prior Senate committee testimony, such argument is misplaced in the instant cause since the assistant prosecutor freely admitted that he was unaware of the immunity given defendant's Senate committee testimony by virtue of R.C. 101.44. While the language of R.C. 101.44 clearly indicates that the immunity provided thereunder may be waived by the person who enjoys the immunity, it is also clear that the state has failed to show that defendant has waived such immunity in writing as provided by R.C. 101.44. Therefore, the courts below clearly erred in finding that defendant's waiver of rights before the grand jury acted as a waiver of the immunity accorded to her prior testimony. While it is true that use immunity is co-extensive with Fifth Amendment protections as stated in *Kastigar* v. *United States* (1972), 406 U.S. 441, 453, this does not mean that one waives such immunity by waiving one's Fifth Amendment right to remain silent in a subsequent grand jury proceeding. R.C. 101.44 is specific in requiring that such immunity be waived in writing. Here it was not.

Notwithstanding the foregoing, the state contends that the use of

defendant's immunized Senate committee testimony amounted to harmless error. For the reasons that follow, we reject the state's argument that *Kastigar* compels an affirmance of the decision below, and hold that the state's use of defendant's immunized testimony tainted the indictment so as to constitute prejudicial, reversible error.

In *Kastigar, supra,* the high court discussed the three types of immunities that may be granted witnesses in exchange for valuable testimony. See, also, *State* v. *Sinito* (1975), 43 Ohio St. 2d 98, 72 O.O. 2d 54, 330 N.E. 2d 896. The first type of immunity is known as "transactional immunity," which protects a witness from prosecution when he or she provides compelled testimony which may be incriminating. The second type of immunity, found here in R.C. 101.44, is called "use immunity," which allows the witness to be prosecuted, but prohibits *any* immunized testimony given by the witness from being used against him or her in a subsequent prosecution. The third type of immunity is referred to as "derivative use immunity," and it provides immunity from the use of any information directly or indirectly derived from such testimony. *Kastigar, supra,* at 453.

In *Kastigar,* the United States Supreme Court dealt with an immunity statute similar to R.C. 101.44, *viz.,* Section 6002, Title 18, U.S. Code, and reviewed its constitutionality with respect to the Fifth Amendment protection against self-incrimination. Therein, the court essentially held, *inter alia,* that the purpose of a statute granting use immunity or derivative use immunity is to leave the witness and the prosecuting authorities in substantially the same position as if the witness had claimed the Fifth Amendment privilege. *Id.* at 457. In line with such purpose, the *Kastigar* court

established a two-prong test that the prosecution must satisfy where a witness makes the claim that his or her immunized testimony was used: (1) the government must deny *any* use of the accused's own immunized testimony against him or her in a criminal case; and (2) the government must affirmatively prove that all of the evidence to be used at trial is derived from sources wholly independent of immunized testimony. *Id.* at 460-462.

In our view, the state has totally failed the *Kastigar* test. By its own admission, the state did not meet the first prong of the *Kastigar* test due to its use of ·defendant's immunized testimony at the grand jury hearing. This fact alone ends the inquiry of whether use of the defendant's immunized testimony constituted error. Nevertheless, even assuming, *arguendo,* that the state's use of the immunized testimony is not totally fatal under the first prong of the *Kastigar* test, it readily appears that the state did not satisfy the second prong of the test as well. The record indicates that the assistant prosecutor used the transcript of defendant's immunized testimony to prepare a list of some of the questions he posed to defendant before the grand jury. In addition, assistant prosecutor Sheeran read the transcript of defendant's immunized testimony in order to impeach her testimony before the grand jury. As the high court stated in *Kastigar, supra,* at 453: "* * * [Immunity] prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." (Emphasis *sic.*)

Under the foregoing circumstances, since the actual transcript of defendant's immunized testimony was used in several respects to impeach her grand jury testimony, we find that the

second prong of the *Kastigar* test was not satisfied in spite of the state's proffer of news articles from which it purportedly derived its information concerning defendant's actions. Clearly, the use of the transcript by the state at the grand jury proceedings militates strongly against a finding that it derived its information concerning defendant's actions from wholly independent sources.

In this vein, we agree with defendant that whenever compelled testimony is used against the witness who provided it, any error cannot be held harmless. As the high court stated in *New Jersey* v. *Portash* (1979), 440 U.S. 450, 459:

"Testimony given in response to a grant of legislative immunity is the essence of coerced testimony. In such cases there is no question whether physical or psychological pressures overrode the defendant's will; the witness is told to talk or face the government's coercive sanctions, notably, a conviction for contempt. The information given in response to a grant of immunity may well be more reliable than information beaten from a helpless defendant, but it is no less compelled. The Fifth and Fourteenth Amendments provide a privilege against *compelled* self-incrimination, not merely against unreliable self-incrimination. * * * Here, * * * we deal with the constitutional privilege against compulsory self-incrimination in its most pristine form. Balancing [of interests] therefore, is not simply unnecessary. It is impermissible."

In our view, dismissal of the entire indictment is the appropriate remedy where the indicting grand jury has heard and considered the immunized testimony of the defendant. *United States* v. *Hinton* (C.A.2, 1976), 543 F. 2d 1002, 1009-1010; and *United States* v. *Tantalo* (C.A.2, 1982), 680 F. 2d 903, 909. Since improper use of im-

munized testimony by the prosecution under *Kastigar* should never be countenanced, dismissal of the indictment will greatly discourage such abuses by prosecuting authorities in future cases.

Therefore, in embracing the insightful reasoning contained in *Kastigar* and *Portash, supra,* we hold that where, in obtaining an indictment from the grand jury, the prosecution uses compelled testimony of a witness immunized pursuant to R.C. 101.44, and where the right of immunity accorded such compelled testimony has not been waived by the witness under the guidelines set forth in R.C. 101.44, any indictment issued against the witness as a result of such grand jury proceedings must be dismissed.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Judgment accordingly.*

DOUGLAS, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HOLMES and JONES, JJ., dissent.

FRED E. JONES, J., of the Twelfth Appellate District, sitting for WRIGHT, J.

HOLMES, J., dissenting. It is my belief that the court of appeals reasonably interpreted *Kastigar* v. *United States* (1972), 406 U.S. 441, in concluding that the indictment need not be invalidated because there may have been some minor error in the grand jury proceedings. Even though it might be concluded that a minimal derivative use was made of Conrad's immunized testimony, such a violation of R.C. 101.44, under the responsive

material as adduced before the trial court, was harmless error.

Upon the defendant's motion to dismiss all counts of the indictment, the trial court heard extensive evidence, and upon the conclusion thereof set forth a well-reasoned analysis of such evidence in its opinion, a pertinent portion of which follows:

"When defendant testified before the Franklin County Grand Jury on July 8, 1986, her Senate committee testimony was used by the inquiring prosecutor to phrase a few questions asked of defendant. As to those few questions, the prosecutor had sources of information which were legitimate, and were independent from defendant's immunized testimony.

"To the extent that defendant, in response to the few questions which were tainted by use of defendant's immunized testimony expanded upon and gave details not included in defendant's immunized testimony, defendant waived the protection afforded by section 101.44, Ohio Revised Code, and the Fifth Amendment to the Constitution of the United States.

"Of the other six hundred (600) questions asked of defendant during her appearances before the grand jury which indicted her, none [was] based upon, and all were independent of, her Senate testimony.

"As to the few offending questions which constituted use of defendant's immunized testimony, the Court has considered that defendant's testimony before the Senate committee was brief, was exculpatory, and was the same as her later testimony before the grand jury.

"Such use by the prosecution, though improper, was harmless beyond a reasonable doubt, and cannot serve properly as a basis for dismissal of the indictment. In making this determination, the Court has considered the quantity of evidence heard by the grand jury including the remainder of defendant's own voluntary testimony."

Referring to these findings of the trial court, the court of appeals stated: "Thus, the trial court, in its rather extensive inquiry, determined that although there were some questions which were 'tainted,' the answer[s] to those questions were not only exculpatory, but so few in number that the prosecution demonstrated that the basis for its indictment and future prosecution was not based upon 'tainted' immunized testimony even in the event that the appellant had not specifically waived her right to the immunity." I agree.

The court of appeals, I believe correctly, cited *Chapman* v. *California* (1967), 386 U.S. 18, in support of its position that the error here was "harmless," and that the indictment need not be invalidated. *Chapman* v. *California* holds that a conviction should be affirmed if a reviewing court concludes that, on the whole record, any constitutional error was harmless beyond a reasonable doubt. Although *Chapman* listed several types of constitutional error which may never be considered harmless, using previously immunized testimony against a defendant in some way is not one of them.

Various federal circuit courts have held that an indictment tainted by the government's use of immunized testimony need not be dismissed if its use was harmless beyond a reasonable doubt. See, *e.g., United States* v. *Hampton* (C.A.11, 1985), 775 F. 2d 1479, at 1489, fn. 51; *United States* v. *Gregory* (C.A.11, 1984), 730 F. 2d 692, at 698; *United States* v. *Beery* (C.A.10, 1982), 678 F. 2d 856, at 860, fn. 3, certiorari denied (1985), 471 U.S. 1066.

Where the record reveals the government had independent sources for the information used to indict a defendant, its use of other, tainted evidence

is harmless beyond a reasonable doubt. *United States* v. *Rogers* (C.A.9, 1983), 722 F. 2d 557, 560-561; see, also, *United States* v. *Shelton* (C.A.7, 1982), 669 F. 2d 446, 464 (any error which might have occurred from grand jury use of the defendant's immunized bankruptcy testimony was harmless).

The Court of Appeals for Franklin County agreed with the trial court's finding that the state met its *Kastigar* burden of showing that the evidence used to indict appellant was obtained from "legitimate independent sources." The trial court had found that nearly all of the more than six hundred questions asked of appellant at the grand jury proceeding were based on information the government obtained from sources wholly independent of appellant's immunized testimony.

Where a witness's immunized testimony is relatively brief, or where events before or after the witness testifies are undeniably the source of evidence presented to the grand jury, a trial court is justified in concluding that an indictment rests on wholly independent evidence under *Kastigar*.

The record here shows that Conrad's testimony before the Ohio Senate Committee was quite brief, constituting sixteen pages, and was totally exculpatory. On the other hand, the record shows that the trial court had before it the testimony of the grand jury assistant prosecutor, Patrick Sheeran, that he first became aware of appellant's activities, for which she was charged, from reading articles printed in the Columbus Citizen Journal in September and October 1985. Further, Sheeran testified that he and Special Prosecutor William Boyland heard the testimony of three other Senate Committee witnesses, and interviewed three more witnesses and reviewed a volume of materials. All of

this information was gathered prior to Conrad's immunized testimony.

Sheeran testified that the remainder of his pre-indictment investigation of appellant's activities was totally unconnected with her short, exculpatory testimony before the Senate Committee. After January 7, 1986, Sheeran interviewed several more witnesses and reviewed several documents delivered to him by witnesses. Sheeran also received five to seven boxes of material obtained by a subpoena issued to other parties (not to appellant) by the Ohio Senate Judiciary Committee, boxes which were formerly in the custody of the Ohio Democratic Party. From the mass of documents in the boxes, Sheeran gleaned one piece of paper that was of use in his investigation of appellant: Conrad Exhibit 1, a memorandum handwritten by appellant. Sheeran testified that appellant's immunized testimony in no way led him to this or any other document.

About June 20, 1986, Sheeran received a transcript of appellant's Ohio Senate Judiciary Committee testimony, which he read the day before appellant made the first of her three grand jury appearances.

Sheeran prepared approximately sixty-nine questions to ask appellant at the grand jury. A few of the questions had transcript page notations next to them. Sheeran used the Senate transcript to assist him in preparing grand jury questions only because it contained appellant's previous *sworn* testimony and because the possibility of a perjury prosecution is always inherent in grand jury proceedings.

Sheeran stressed that, had he known appellant's Senate testimony was protected by a grant of statutory immunity, he would *not* have used it at the grand jury. Sheeran did not obtain any information from the immunized

testimony that he did not already know from independent sources.

In sum, of the six hundred fifteen questions Sheeran asked appellant at her three grand jury appearances, only four (asked at her July 7, 1986 appearance) made any reference to appellant's immunized testimony; only three of those were drawn directly from the Senate transcript. Sheeran quoted from the transcript in an attempt to impeach appellant only once.

In addition to appellant, at least twenty-five witnesses testified before the grand jury, generating 1,650 pages of testimony. At the *Kastigar* hearing, Sheeran identified in detail the independent sources of information that led him to virtually every one of those grand jury witnesses.

Given the above record, the trial court was justified in finding that the government had legitimate, independent sources for the evidence gathered against appellant. Considering the record in its entirety, the minuscule use of appellant's exculpatory immunized testimony was harmless beyond a reasonable doubt.

For the foregoing reasons, the decision of the Court of Appeals for Franklin County affirming the ruling of the Franklin County Court of Common Pleas should be affirmed.

MOYER, C.J., concurs in the foregoing dissenting opinion.

JONES, J., dissenting. In considering the questions of constitutional law involved in this case, I believe it would be helpful to review briefly the nature of the charges against appellant and the disposition in the lower courts. When the plea bargain was reached in the trial court, there was then pending against appellant an indictment charging four counts of bribery and one count of perjury. Appellant's motion to dismiss the indictment had already been denied. Appellant thereupon pleaded no contest to a "stipulated lesser included offense" of obstructing official business, in violation of R.C. 2921.31, a second degree misdemeanor. The stipulation provided that obstructing official business was a lesser included offense of Count Four of the indictment, bribery. The bargain further provided that the court would enter a *nolle prosequi* as to Counts One, Two, Three and Five of the indictment. The trial court accepted the no contest plea and the prosecutor recited the facts, in part, as follows:

"This defendant, on or about July 5, 1984, and without privilege to do so, told one Leland Brubaker, who is one of the principals in the architectural firm of Brubaker/Brandt, and which has been in business for over 25 years, and has been both short listed and selected for state work throughout that time regardless of the party in power, that in order to be considered for state work — not at that time, but for later on in 1985 or 1986 — he should contribute to the Governor's Club, which costs $1,000; participate in the Governor's Club Golf Outing, which would cost another $1,000; and attend the Governor's Fall Dinner, which would cost him another $1,000."

Based upon the foregoing recitation, as well as other facts related by the prosecutor, the court found appellant guilty, ordered her to perform fifty hours of community service at the YWCA, and pay a fine of $500 and costs. Strangely, the parties agreed that appellant would retain the right to appeal the trial court's order denying the motion to dismiss, even though such motion to dismiss was effectively granted by virtue of the plea bargain and the *nolle prosequi*.

While it is abundantly clear that appellant was then entitled to appeal the finding of guilt to the "stipulated

lesser included offense," I question the right of the appellant to appeal, by agreement, the order denying the motion to dismiss simply because the state agreed that such could be done. The appeal should have been limited to the propriety of the finding of guilt based upon the facts related by the prosecutor, which appeal, of course, would then be a great deal narrower with respect to the use of immunized testimony before the Senate Judiciary Committee. The question before this court should be whether the state's use of such immunized testimony tainted the finding of guilt following the no contest plea to obstructing official business.

Nevertheless, since the majority has seen fit to reverse the judgment of the court of appeals and now determine that the entire indictment must be dismissed because the grand jury heard appellant's immunized testimony, such issue must be addressed.

I disagree with the holding of the majority that the entire indictment must be dismissed where the indicting grand jury has heard and considered the immunized testimony of the appellant. When appellant's immunized testimony before the Senate Judiciary Committee was used to impeach her testimony before the grand jury, thereby leading to an indictment for perjury, the perjury indictment should have been dismissed. *Kastigar* v. *United States* (1972), 406 U.S. 441, and *New Jersey* v. *Portash* (1979), 440 U.S. 450. By the same token, it is obvious that appellant would not have been indicted for perjury had she not, upon three separate occasions, signed a document agreeing to waive her constitutional rights, including her Fifth Amendment right to remain silent.

Aside from the perjury indictment, however, *Kastigar, supra,* does not require dismissal of the four other counts charging appellant with bribery.

*Pillsbury Co.* v. *Conboy* (1983), 459 U.S. 248, held, long after *Kastigar* and *Portash, supra,* that the prior grant of use immunity does not afford protection for all self-incriminating information disclosed by the immunized witness on any occasion after the giving of the immunized testimony. The court further held in *Pillsbury, supra,* that use immunity was intended to immunize and exclude from a subsequent criminal trial only that information to which the government expressly has surrendered future use. Since the appellant herein did not waive in writing the immunity granted by R.C. 101.44, when testifying before the Senate Judiciary Committee, it is clear that such testimony could not be used as evidence against her in a criminal trial.

The trial court held, in overruling appellant's motion to dismiss all counts of the indictment, that the evidence which the state proposed to use was derived from legitimate independent sources. Such met the test of *Kastigar, supra.* The trial court's findings were as follows:

"When defendant testified before the Franklin County Grand Jury on July 8, 1986, her Senate committee testimony was used by the inquiring prosecutor to phrase a few questions asked of defendant. As to those few questions, the prosecutor had sources of information which were legitimate, and were independent from defendant's immunized testimony.

"To the extent that defendant, in response to the few questions which were tainted by use of defendant's immunized testimony expanded upon and gave details not included in defendant's immunized testimony, defendant waived the protection afforded by section 101.44, Ohio Revised Code, and the Fifth Amendment to the Constitution of the United States.

"Of the other six hundred (600) questions asked of defendant during

her appearances before the grand jury which indicted her, none [was] based upon, and all were independent of, her Senate testimony.

"As to the few offending questions which constituted use of defendant's immunized testimony, the Court has considered that defendant's testimony before the Senate committee was brief, was exculpatory, and was the same as her later testimony before the grand jury.

"Such use by the prosecution, though improper, was harmless beyond a reasonable doubt, and cannot serve properly as a basis for dismissal of the indictment. In making this determination, the Court has considered the quantity of evidence heard by the grand jury including the remainder of defendant's own voluntary testimony."

It is readily apparent that the trial court determined that although there were some questions which were "tainted," the answers to those questions were not only exculpatory, but so few in number that the prosecution demonstrated that its indictment and future prosecution were not based upon "tainted" immunized testimony.

There is further authority for the validity of the indictment in the case of *United States* v. *Calandra* (1974), 414 U.S. 338, 344-345, where the court held as follows:

"The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, *Costello* v. *United States, supra; Holt* v. *United States,* 218 U.S. 245 (1910); or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination, *Lawn* v. *United States,* 355 U.S. 339 (1958)."

Accordingly, there was no violation of the use immunity statute since appellant signed written waivers divesting herself of her Fifth Amendment protections, which are coextensive with her grant of use immunity. I therefore would hold that even if there were a violation of R.C. 101.44, the court of appeals was correct in agreeing with the trial court's reasoning that the prosecutor's minimal use, in conjunction with the exculpatory nature of the evidence, was not enough to render the indictment invalid, in its entirety, thereby requiring dismissal.