OPINION
{¶ 1} This appeal is brought by the State pursuant to R.C.2945.67 from a judgment of the common pleas court dismissing two counts of an indictment. Defendant, Matthew Dillon, has cross-appealed from the trial court's decision to not disclose grand jury transcripts.
 {¶ 2} During July 2004, Defendant was arrested for burglary and drug trafficking offenses. Defendant was at that time under investigation by the Darke County Sheriff's Office and Greenville police for several theft related offenses in the area. On July 23, 2004, Defendant and his attorney met with representatives of several police agencies and the Darke County Prosecutor in anticipation of reaching a "global resolution" of all of the matters pending against Defendant. An agreement was reached which called for Defendant to cooperate with law enforcement authorities and provide information about a number of theft-related offenses that were under investigation.
 {¶ 3} In exchange for his promise of cooperation, the law enforcement officials promised that Defendant would be allowed to resolve all the offenses against him, including those already charged and those that were yet under investigation, by entering guilty pleas to six specified offenses. They also promised to not use Defendant's statements against him if either party didn't accept the plea deal. The specific portion of the agreement at issue in this case was put into writing by the parties and provides: "Statements are proffer. Not to be used against Defendant if either side doesn't accept deal." It was signed by the police officers, the prosecutor, Defendant, and his attorney.
 {¶ 4} Pursuant to this agreement, Defendant gave several tape recorded statements to law enforcement authorities. Transcripts of those conversations were turned over to the county prosecuting attorney, who reviewed them before presenting this matter to the grand jury. At the grand jury proceeding, the officers who interviewed Defendant testified. One officer, Detective Baker, recited for the grand jury the statements Defendant had made to him regarding two separate offenses. Detective Baker also opined that Defendant was not truthful in the statements he made.
 {¶ 5} On December 13, 2004, Defendant was indicted on sixteen charges, including five counts of receiving stolen property, R.C.2913.51, four counts of theft, R.C. 2913.02, four counts of breaking and entering, R.C. 2911.13, one count of grand theft, R.C. 2913.02, one count of burglary, R.C. 2911.12, and one count of engaging in a pattern of corrupt activity, R.C. 2923.32. On June 2, 2005, five days before the scheduled trial, Defendant filed a Crim.R. 12(C)(1) motion to dismiss the indictment, claiming that the State had violated his plea/immunity agreement by using his immunized statements in investigating these offenses and presenting them to the grand jury after promising that his statements would not be used against him, contrary to the holding in Kastigar v. United States (1972), 406 U.S. 441,92 S.Ct. 1653, 32 L.Ed.2d 212.
 {¶ 6} In conjunction with his motion to dismiss the indictment, Defendant also filed a motion seeking disclosure of grand jury transcripts he claimed were necessary to demonstrate how and to what extent the State improperly used his immunized statements before the grand jury. The trial court overruled that motion and denied Defendant access to the grand jury transcripts.
 {¶ 7} Prior to a hearing on his motion to dismiss the indictment, and pursuant to a plea agreement, Defendant proffered no contest pleas to counts two, six, eleven and twelve of the indictment, in exchange for the State's dismissal of the remaining charges. The trial court reserved ruling on Defendant's pleas.
 {¶ 8} On June 28, 2005, an initial Kastigar hearing was held. Defendant and his trial counsel both testified concerning their understanding of the immunity/plea agreement. On July 13, 2005, the trial court issued its judgment, concluding that Defendant had been granted a type of informal use or "pocket" immunity by the prosecutor, that Kastigar governs the State's use of the Defendant's statements, and that a further hearing would be held to determine whether there were any Kastigar
violations or whether, instead, the State's evidence was obtained from a source independent of Defendant's statements to law enforcement authorities.
 {¶ 9} On October 31, 2005, a second Kastigar hearing was held. Detective Rodney Baker of the Darke County Sheriff's Office testified regarding his investigation of the offenses charged in counts two and six of the indictment. Detective Eric Roberts of the Greenville police department testified regarding his investigation of counts eleven and twelve. Richard Howell, the Darke County prosecuting attorney, also testified.
 {¶ 10} The evidence adduced at the hearing revealed that Prosecutor Howell had reviewed transcripts of the statements Defendant made to police before presenting this matter to the grand jury, and that during his testimony before the grand jury Detective Baker recited for the grand jury the statements Defendant made to him regarding the offenses charged in counts two and six. Baker also opined that Defendant was not being truthful in the statements he made to police about those offenses.
 {¶ 11} On November 4, 2005, the trial court issued its judgment, concluding that, with respect to counts two and six of the indictment, use of Defendant's statements to investigate those offenses and to inform the decision to charge Defendant, as well as use of his statements during the presentation of the case to the grand jury, constituted an improper use of Defendant's immunized statements in violation of Kastigar. Accordingly, the trial court dismissed counts two and six of the indictment. With respect to counts eleven and twelve, the trial court found noKastigar violation. Thus, the court accepted Defendant's previously tendered no contest pleas to those counts and found Defendant guilty.
 {¶ 12} On November 15, 2005, the State timely appealed to this court from the trial court's judgment dismissing counts two and six of the indictment. Defendant timely cross-appealed on December 1, 2005. On January 20, 2006, the trial court sentenced Defendant to consecutive twelve month prison terms on counts eleven and twelve, for a total sentence of twenty-four months.
 STATE'S ASSIGNMENT OF ERROR {¶ 13} "THE TRIAL COURT ERRED IN DISMISSING TWO COUNTS OF THE INDICTMENT BY APPLYING THE STANDARDS OF KASTIGAR V. UNITEDSTATES (1972), 406 U.S. 441 INSTEAD OF CONTRACT PRINCIPLES IN INTERPRETING THE PROFFERED PLEA NEGOTIATION AGREEMENT."
 {¶ 14} As its basis for dismissing counts two and six of the indictment, the trial court relied upon Kastigar, supra, and decisions of the Ohio Supreme Court and this court followingKastigar. See: State v. Conrad (1990), 50 Ohio St.3d 1, andState v. Brocious (Sept. 5, 2003), Clark App. No. 2002CA0089, 2003-Ohio-4708. The trial court held that, per Kastigar,
Defendant's Fifth Amendment rights were violated by the State's use of Defendant's immunized statements during the investigation and in obtaining his indictment for the offenses in counts two and six.
 {¶ 15} In Kastigar, the United States Supreme Court examined the constitutionality of a federal statute that provides immunity for witnesses who are then required to make statements against their interests. Section 6002, Title 18, United States Code. The Supreme Court held that the statute could be used to compel testimony from an unwilling witness over a claim of a Fifth Amendment privilege against self-incrimination because the statute grants immunity from use of the compelled testimony and evidence derived therefrom in any subsequent criminal proceeding which is coextensive with the scope of the privilege. In other words, because the statute insures that a witness's immunized testimony will be inadmissible in any future criminal proceeding, as will be any evidence obtained by prosecutors directly or indirectly as a result of the immunized testimony, the protections afforded by the Fifth Amendment are not denied.United States v. Orlando (6th Cir., 2002), 281 F.3d 586, citingUnited States v. Turner (6th Cir., 1991), 936 F.2d 221,223-224. Kastigar also adopted a two part test to be used when a witness claims that his or her immunized testimony was used. First, the government must deny any intent to use of the accused's own immunized testimony against him or her in a criminal case. Second, the government must affirmatively prove that all of the evidence proposed to be used is derived from legitimate sources, wholly independent of the compelled (immunized) testimony.
 {¶ 16} In State v. Conrad, supra, the Ohio Supreme Court examined a statute, R.C. 101.44, which provides immunity for witnesses who are compelled to testify before a Senate or House committee or subcommittee pursuant to subpoena. The Supreme Court adopted and applied the two part test from Kastigar, and held that where the prosecution uses compelled testimony of a witness who was immunized pursuant to R.C. 101.44 in order to obtain an indictment against him, then absent the witness's waiver of the immunity the witness was granted the indictment must be dismissed because it violates the rule of Kastigar. Id., at 4-5. The Supreme Court further held that such errors are not harmless.Id., at 5.
 {¶ 17} In State v. Brocious, supra, this court examined use immunity in the context of "Garrity warnings," Garrity v.State of New Jersey (1967), 385 U.S. 493, 87 S.Ct. 616,17 L.Ed.2d 562, that were given to a police officer who was the subject of an internal affairs investigation and compelled to testify or face loss of his job. Jones v. Franklin CountySheriff (1990), 52 Ohio St.3d 40. We applied and followedKastigar and Conrad, concluding that those cases prohibit any use by the prosecutor of a defendant's statement, including non-evidentiary uses such as informing the decision to prosecute, and that the burden is on the State to establish that no use was made of the statement and that any evidence to be used at trial was derived from sources wholly independent of the immunized statement. Id., at ¶ 14. We found that because the prosecutor had reviewed Brocious' statement in making her decision whether to charge Brocious, the State could not meet its burden to prove that the prosecutor had made no use of Brocious' immunized statements or that the evidence to be used at trial was derived from wholly independent sources. Id., at ¶ 15-16. We concluded that, pursuant to Conrad, the appropriate remedy was dismissal of the indictment. Id., at ¶ 16.
 {¶ 18} The State argues that the trial court erred in dismissing counts two and six of the indictment based upon violations of Kastigar the court found because its rule does not apply when, as here, the witness is not compelled to testify. The State contends that when a defendant voluntarily relinquishes his Fifth Amendment right and agrees to provide information as part of a negotiated plea agreement, as Defendant did here, the courts must determine the rights and duties of the parties under the plea agreement by applying contract principles. We agree.
 {¶ 19} The Fifth Amendment protects against compelled self-incrimination, and testimony given under compulsion implicates that constitutional right. Murphy v. WaterfrontCommission (1964), 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678.Kastigar, Conrad and Brocious concerned defendants who were compelled or forced to testify pursuant to subpoena or under threat of contempt or loss of a job after they were granted immunity. That grant of immunity was coextensive with the Fifth Amendment privilege because it prohibited any use of their compelled testimony and evidence derived therefrom in any subsequent criminal proceeding absent a waiver of the immunity that was granted. In this case, however, that threshold requirement of compulsion is not present.
 {¶ 20} Defendant was not either forced to testify or face other adverse consequences if he refused to make a statement. Rather, Defendant voluntarily elected to relinquish his Fifth Amendment right and provide information to law enforcement authorities as part of a negotiated plea agreement. In that circumstance, the Fifth Amendment privilege is voluntarily waived, and constitutional principles applicable to compelled self-incrimination are not implicated. Therefore, we conclude that the trial court erred in applying Kastigar as it did.United States v. Eliason (7th Cir., 1993), 3 F.3d 1149, 11521-153; United States v. Camp (9th Cir., 1995), 72 F.3d 759,761; United States v. McHan (4th Cir., 1996), 101 F.3d 1027, 10351-036; United States v. Gutierrez (10th Cir., 1982),696 F.2d 753, 756 at n. 6.
 {¶ 21} Because plea agreements are contractual in nature, they are subject to contract law principles. Randolph v. OhioAdult Parole Authority (Jan. 21, 2000), Miami App. No. 99CA417. Regardless of labels such as "pocket" immunity, when in a cooperation/immunity agreement, an oral use immunity agreement, or an informal immunity agreement, a defendant voluntarily agrees to provide information to law enforcement authorities as part of a negotiated plea agreement in return for their promises that defendant's statements will not be used against him in any subsequent criminal proceeding, that agreement is contractual in nature, and in determining the meaning of the agreement and the intent of the parties, contract principles and remedies govern.United States v. Turner, supra; United States v. Orlando, supra;United States v. Pelletier (2nd Cir., 1990), 898 F.2d 297,301-302. Such agreements give rise to a prosecutorial obligation not to use the information against the defendant who provided it, not because of compelled self-incrimination but because due process requires prosecutors to scrupulously adhere to commitments made to suspects in which they induce the suspects to surrender their constitutional rights in exchange for giving information that the government needs and which simultaneously implicates the suspect. Eliason, supra.
 {¶ 22} In this case contract principles and remedies govern the construction of the parties' plea agreement. Accordingly, we will reverse the trial court's dismissal of counts two and six of the indictment based upon its finding of Kastigar violations and remand this matter to the trial court to determine the rights and duties this plea agreement/contract imposes and whether they were breached by the State. That includes whether the plea agreement was breached by the State's use of the statements Defendant made to investigate his involvement in the offenses charged, to inform the decision to charge Defendant for those offenses, in presentation of the case to the grand jury, potential use of those statements in the State's case-in-chief or for impeachment purposes or in a prosecution for perjury, and the appropriate contractual remedy in the event a breach of the plea agreement is found by the court.
 {¶ 23} The State's assignment of error is sustained.
 DEFENDANT'S CROSS-ASSIGNMENT OF ERROR: {¶ 24} "DUE PROCESS AND NOTIONS OF FUNDAMENTAL FAIRNESS PERMIT DISCLOSURE OF GRAND JURY TRANSCRIPTS UPON A SHOWING OF PARTICULARIZED NEED. MATT MUST SHOW HE WAS PREJUDICED AND HIS RIGHTS ADVERSELY AFFECTED BY THE DENIAL OF TRANSCRIPTS. DID MATT DEMONSTRATE A PARTICULARIZED NEED BY SPECIFYING AND INITIALLY SUPPORTING ALLEGATIONS OF KASTIGAR VIOLATIONS AT THE GRAND JURY AND WITH NO MEANS OTHER THAN TRANSCRIPTS AVAILABLE TO CONCLUSIVELY PROVE WHAT WAS SAID DURING GRAND JURY PROCEEDINGS."
 {¶ 25} Crim.R. 6(E) provides that matters occurring before the grand jury may be disclosed by the court at the request of a defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. In State v. Greer (1981), 66 Ohio St. 139, the Ohio Supreme Court stated:
 {¶ 26} "1. Disclosure of grand jury testimony, other than that of the defendant and co-defendant, is controlled by Crim.R. 6(E), not by Crim.R. 16(B)(1)(g), and the release of any such testimony for use prior to or during trial is within the discretion of the trial court.
 {¶ 27} "2. Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy. (Paragraph three of the syllabus in State v. Patterson,28 Ohio St.2d 181, 277 N.E.2d 201, approved and followed.)
 {¶ 28} "3. Whether particularized need for disclosure of grand jury testimony is shown is a question of fact; but, generally, it is shown where from a consideration of all the surrounding circumstances it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony.
 {¶ 29} "4. When defense counsel asserts and establishes to the satisfaction of the trial court a particularized need for certain grand jury testimony, the trial court, along with defense counsel and counsel for the state, shall examine the grand jury transcript in camera and give to defense counsel those portions of the transcript relevant to the state's witness' testimony at trial, subject to the trial court's deletion of extraneous matter, and issuance of protective orders where necessary." (Syllabus by the Court).
 {¶ 30} When he filed his motion to dismiss the indictment, Defendant also filed a motion for disclosure of grand jury transcripts. Defendant contended that the statements he made to police as part of his immunity/plea agreement had been used by the State before the grand jury in violation of the prosecutor's promise that his statements would not be used against him. For his showing of particularized need, Defendant argued that he required the grand jury transcripts to demonstrate that particular violation of the immunity/plea agreement, and that no other evidence would suffice for that purpose.
 {¶ 31} Several months before the trial court granted Defendant's motion to dismiss the indictment based uponKastigar violations, the court denied Defendant's motion for disclosure of the grand jury transcripts, concluding that the mere possibility that Defendant's statements may have been presented to the grand jury, absent evidence that tainted testimony was actually presented, was insufficient to demonstrate a particularized need for disclosure. Subsequently, during the final Kastigar hearing, one of the police officers who had interviewed Defendant and recorded his statements admitted that he recited Defendant's statements before the grand jury and also opined that Defendant was not being truthful when he made those statements. Accordingly, the trial court dismissed counts two and six of the indictment, the counts/charges directly affected by the improper use of Defendant's statements, per Kastigar.
 {¶ 32} Having reversed the trial court's dismissal of counts two and six of the indictment because the trial court improperly applied the rule of Kastigar, we will remand this case to the trial court to apply contract principles to determine the meaning of the parties' plea agreement and whether that agreement was breached by the State's use of the statements Defendant made pursuant that plea agreement. If upon remand the trial court determines that the agreement prohibited the State from reciting or using Defendant's statements before the grand jury, that finding plus evidence demonstrating that Defendant made statements to the officers regarding the offenses set forth in counts two and six of the indictment, would constitute a sufficient showing of particularized need to entitle Defendant to the in camera inspection of related grand jury transcripts contemplated by Greer, supra.
 {¶ 33} Defendant's assignment of error in his cross-appeal is sustained. Having sustained both the State's and Defendant's assignments of error, the judgment of the trial court with respect to Defendant's convictions for the offenses alleged in counts two and six of the indictment, and the sentences imposed thereon, will be reversed and vacated, and the case remanded for further proceedings consistent with this opinion.
Brogan, J. and Donovan, J., concur.