{¶ 1} Robert Andrew Parsons appeals his conviction from the Athens County Common Pleas Court for Unlawful Sexual Conduct With a Minor, in violation of R.C. 2907.04(B)(4), a felony of the third degree. Parsons was an Ohio University Policeman. This appeal involves aGarrity statement that Parsons gave the state on December 28, 2005.
 {¶ 2} The Fifth Amendment protects persons against compelled self-incrimination, and any testimony given under compulsion invokes that constitutional right. Murphy v. Waterfront Commission (1964),378 U.S. 52. If the state forces a public employee to choose between either answering incriminating questions or forfeiting his job for refusing to answer, the state cannot use the employee's statements against him in a subsequent criminal prosecution if the employee chooses to answer because the *Page 2 
statements were not given voluntarily. Garrity v. New Jersey (1967),385 U.S. 493. Thus, all statements made by the public employee under these conditions become immunized testimony. Id.
 {¶ 3} On appeal, Parsons contends that the trial court erred when it denied his motion to suppress evidence derived from his Garrity
interview. Because competent, credible evidence supported the trial court's factual findings, we disagree. Parsons next contends that the trial court erred when it denied his motion for access to the grand jury transcript. Because we find that any error committed by the trial court was harmless beyond a reasonable doubt, we disagree and find that the trial court did not abuse its discretion when it denied the motion. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 4} An Athens County Grand Jury rendered a twelve-count indictment against Parsons for one count of unlawful sexual conduct with a minor (a felony of the third degree), three counts of importuning (felonies of the fifth degree), one count of complicity to obstructing justice (a felony of the fifth degree), and seven counts of falsification (misdemeanors of the first degree).
 {¶ 5} Parsons entered not guilty pleas to the twelve offenses. Eventually, he filed a motion to suppress evidence and a motion for access to the grand jury transcript. He maintained that the state gathered evidence against him by wrongfully using information it received from his compelled (immunized) statement. *Page 3 
 {¶ 6} The trial court held a hearing to consider the motions. The state called several witnesses. Jill Dorfman, a sex abuse investigator for Athens County Children's Services, and James Thompson, Athens County Deputy Sheriff, were the two investigators for the criminal cases against Parsons.
 {¶ 7} Dorfman testified that she and Thompson began the investigation against Parsons when someone complained to her office about Parsons on November 14, 2005. On that same day, they interviewed victim V.F. and became aware of alleged contact between Parsons and young women.
 {¶ 8} They interviewed victim A.C. on November 17, December 8, and December 16, 2005. In the second or third interview, A.C. advised them that she had computer contact with Parsons. Dorfman further knew that A.C. had an older sister CM. because she met her on a home visit involving another case. Thompson also knew of CM. because he talked to her by phone about another matter on or before December 7, 2005.
 {¶ 9} The investigators interviewed victim S.J. on November 21, 2005, who advised them that she also had computer contact with Parsons. On December 2, S. J.'s mother faxed to Dorfman a printout of instant messaging between S.J. and Parsons that occurred on November 20, 2005.
 {¶ 10} Dorfman further testified that they interviewed Parsons on December 2 and December 21, 2005. After the first interview, they contacted Parsons employer, the Ohio University Police Department, who put them in contact with Lt. Christopher *Page 4 
Johnson. Johnson, who worked with Parsons, handled the departmental investigation, which was separate from the criminal investigation.
 {¶ 11} Johnson met with the two criminal investigators on December 8, 2005. He gave them information from Parsons' work computer that included a "friends list" from a Yahoo Messenger log and some profiles. One profile involved the name "sweetmisery_69" with A.C.'s photograph and info showing her actual name. Dorfman testified that she talked to Thompson about obtaining A.C.'s computer prior to December 29, 2005. Thompson stated that he talked to A.C. or her mother about obtaining the computer before December 29, 2005. Johnson conducted theGarrity interview with Parsons on December 28 and met with the investigators on December 29, 2005.
 {¶ 12} On December 29, 2005, Johnson met with Dorfman, Thompson, and the special prosecutor. The testimony showed that the prosecutor instructed Johnson not to divulge to them any information that he obtained from Parsons on December 28 and to "just sit there." Johnson testified that he did not divulge the information to anyone, including the grand jury. Dorfman and Thompson testified that Johnson did not divulge any information from the Garrity interview to them until the date of the evidentiary hearing for the motion to suppress.
 {¶ 13} The testimony of Thompson and Johnson was consistent with Dorfman's testimony. Johnson stated that he asked Josh Thomas of the Ohio University CNS (computer network services) to analyze and obtain information from Parsons' work computer. However, Thompson, not Johnson, asked Thomas to go with him to analyze *Page 5 
A.C.'s computer. But, after setting up the appointment, Thompson had to go to court for another matter. Therefore, Thompson asked Johnson to go with Thomas to pick up A.C.'s computer. Johnson testified that he was aware that the two investigators were going to obtain A.C.'s computer before the Garrity interview.
 {¶ 14} The testimony showed that the special prosecutor had a list of grand jury witnesses. He needed their addresses so that he could subpoena them. He asked Thompson to obtain C.M.'s address. Thompson apparently had trouble obtaining it so he asked Johnson for the address. Johnson used C.M.'s phone number, which he obtained from theGarrity interview, to do a reverse telephone directory search to get her address for the special prosecutor.
 {¶ 15} After the hearing, the trial court overruled both motions. Eventually, pursuant to a plea agreement, Parsons entered a no contest plea to the first count in the indictment in exchange for the state dismissing the remaining counts. The victim in count one was A.J. The court found Parsons guilty of unlawful sexual conduct with a minor and sentenced him accordingly.
 {¶ 16} Parsons appeals and raises the following two assignments of error: I. "The Court of Common Pleas erred when it refused to suppress evidence directly or indirectly derived from the immunized testimony of the Appellant." II. "It was reversible error for the Court of Common Pleas to deny the Appellant access to the transcripts of the grand jury proceedings."
 II. *Page 6 {¶ 17} In his first assignment of error, Parsons contends that the trial court erred when it failed to grant his motion to suppress the state's proposed evidence. Specifically, Parsons asserts that the state derived its evidence from his compelled (immunized) testimony given during his Garrity interview. That is, he claims the state did not obtain the evidence from legitimate sources, wholly independent of his immunized testimony, as required by the second prong of the test set forth in Kastigar v. United States (1972), 406 U.S. 441.
 {¶ 18} Our review of a decision of a motion to suppress evidence presents mixed questions of law and fact. State v. McNamara (1997),124 Ohio App.3d 706, citing United States v. Martinez (C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. State v. Dunlap (1995),73 Ohio St.3d 308, 314. Accordingly, we must uphold the trial court's findings of fact if competent, credible evidence in the record supports them. Id. We then conduct a de novo review of the trial court's application of the law to the facts. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 19} The United States Supreme Court "adopted a two part test to be used when a witness claims that his or her immunized testimony was used [in a later criminal proceeding]. First, the government must deny any intent to use of the accused's own immunized testimony against him or her in a criminal case. Second, the government must affirmatively prove that all of the evidence proposed to be used is derived from legitimate sources, wholly independent of the compelled (immunized) testimony."State v. Dillon, *Page 7 
Darke App. No. 05CA1674, 2006-Ohio-4931, ¶ 15, citing Kastigar, supra. The Ohio Supreme Court followed Kastigar in State v. Conrad (1990),50 Ohio St.3d 1.
 {¶ 20} Here, the state agrees with Parsons that it must follow the two-pronged test in Kastigar. It maintains that its evidence does not violate the Kastigar test while Parsons claims that the state's evidence violates the second prong of the test.
 {¶ 21} After examining the record, we find, except for witness CM., that competent, credible evidence supports the trial court's finding that the state obtained its proposed evidence from legitimate sources, wholly independent of Parsons' immunized testimony. Lt. Chris Johnson is the person who interviewed Parsons on December 28, 2005. He stated that he did not disclose to Dorfman, Thompson, the special prosecutor, or the grand jury any information from the Garrity interview. The two investigators corroborated his testimony as it related to them. In fact, they testified that when Johnson sat in on meetings with them and the special prosecutor, the prosecutor instructed him to not disclose to them any information from the Garrity interview.
 {¶ 22} Parsons, however, contends that "[m]ere denials of use ofGarrity materials are insufficient." The crux of this argument is that Johnson's general denial that he did not disclose to the investigators or prosecutor the information he obtained from the December 28, 2005, interview with Parsons, by itself, is not sufficient.
 {¶ 23} The state, however, provided more than a mere denial from Johnson. The two investigators testified and corroborated Johnson's denial.
 {¶ 24} Therefore, we find that the above testimony is competent, credible evidence that all of the evidence the state proposed to use, except for witness CM., was derived *Page 8 
from legitimate sources, wholly independent of the immunized testimony of Parsons on December 28, 2005.
 {¶ 25} However, we find that undisputed competent, credible evidence shows that the state did use information from the Garrity interview as it relates to CM., one of the state's proposed witnesses. Johnson admitted that he used C.M.'s phone number, which he derived from Parsons' Garrity statement, to conduct a reverse phone look up to obtain C.M.'s address so that the special prosecutor could subpoena her to testify before the grand jury.
 {¶ 26} Nevertheless, we find the trial court's error, as it relates to CM., harmless beyond a reasonable doubt. The only evidence used from theGarrity interview was C.M.'s phone number. Johnson used it to get C.M.'s address. However, the state introduced evidence that they could have obtained C.M.'s address without the aid of Johnson. Dorfman and Thompson testified that they knew CM. before the Garrity interview. Dorfman met CM. while at C.M.'s mother's home on an unrelated matter. Thompson talked to CM., before the Garrity interview, about another matter. Therefore, we find that the state knew CM. and could have obtained C.M.'s address without Johnson's help. Consequently, the trial court's error as it relates to CM. was harmless beyond a reasonable doubt. As a result, the trial court did not err when it overruled Parsons' motion to suppress.
 {¶ 27} Accordingly, we overrule Parsons' first assignment of error.
 III. *Page 9 {¶ 28} Parsons contends in his second assignment of error that the trial court erred when it denied him access to the grand jury transcript. He maintains that the state used information from theGarrity interview to obtain the multi-count indictment against him.
 {¶ 29} "Disclosure of grand jury testimony, other than that of the defendant and co-defendant, is controlled by Crim.R. 6(E), not by Crim.R. 16(B)(1)(g), and the release of any such testimony for use prior to or during trial is within the discretion of the trial court."State v. Greer (1981), 66 Ohio St.2d 139, paragraph one of the syllabus. Thus, we will not disturb the trial court's judgment absent an abuse of discretion. The term abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 30} "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." Greer at paragraph two of syllabus.
 {¶ 31} "Whether particularized need for disclosure of grand jury testimony is shown is a question of fact; but, generally, it is shown where from a consideration of all the surrounding circumstances it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." Id. at paragraph three of syllabus.
 {¶ 32} "When defense counsel asserts and establishes to the satisfaction of the trial court a particularized need for certain grand jury testimony, the trial court, along with *Page 10 
defense counsel and counsel for the state, shall examine the grand jury transcript in camera and give to defense counsel those portions of the transcript relevant to the state's witness' testimony at trial, subject to the trial court's deletion of extraneous matter, and issuance of protective orders where necessary." Id. at paragraph four of syllabus.
 {¶ 33} Here, the trial court made a factual finding that "Defendant has not shown a particularized need for the Grand Jury transcripts." The trial court is in the best position to evaluate witness credibility.Dunlap at 314. Accordingly, we must uphold the trial court's findings of fact if competent, credible evidence in the record supports them. Id.
 {¶ 34} Again, based on the same evidence we outlined in the first assignment of error, we find that competent, credible evidence supports the trial court's finding of fact except for witness CM. Specifically, we find that Parsons did show a particularized need for the grand jury transcript as it relates to CM. The record shows that Johnson interviewed Parsons when Parsons gave his Garrity statement. Lt. Johnson testified at the grand jury. Johnson admitted that he used C.M.'s phone number, which he derived from Parsons' Garrity statement, to conduct a reverse phone look up to obtain C.M.'s address so that the special prosecutor could subpoena her to testify before the grand jury.
 {¶ 35} Therefore, we find that these undisputed facts show a particularized need for Parsons to have access to the grand jury transcript. See, e.g., Dillon, supra, 2006-Ohio-4931, ¶ 32 (when the state admits using a Garrity statement in aid of the criminal *Page 11 
prosecution, this fact shows a "particularized need" for an in camera inspection of the grand jury transcript).
 {¶ 36} Nevertheless, even though we find that the trial court erred when it found that Parsons did not show a particularized need for the grand jury transcript as it relates to CM., we further find that such error was harmless beyond a reasonable doubt. The only evidence used from the Garrity interview was witness C.M.'s phone number. Johnson used it to get her address for the special prosecutor. However, the state introduced evidence that they could have obtained C.M.'s address without the aid of Johnson. Dorfman and Thompson testified that they knew CM. before the Garrity interview. Dorfman, while at C.M.'s mother's home on an unrelated matter, met CM. Thompson talked to CM. about another matter before the Garrity interview. Therefore, we find that the state knew CM. and could have obtained C.M.'s address without Johnson's help.
 {¶ 37} In addition, the particularized need for disclosure because of the use of a phone number to obtain an address that the state could have obtained elsewhere does not outweigh the need for secrecy of the grand jury proceedings. Consequently, the trial court's error was harmless beyond a reasonable doubt.
 {¶ 38} Accordingly, we overrule Parsons' second assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 12 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellant pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 McFarland, P.J. and Harsha, J.: Concur in Judgment Only. *Page 1