OPINION *Page 2 
{¶ 1} On August 21, 2006, the Stark County Grand Jury indicted appellee, Anthony Jackson, on one count of illegal possession of a firearm in liquor permit premises in violation of R.C. 2923.121, a felony of the fifth degree. At the time of the incident, appellee was a Canton City police officer on administrative leave due to pending criminal charges.
 {¶ 2} Sometime during the discovery process, appellee learned his internal affairs file and his Garrity statement, a statement elicited from a public employee that cannot be used in a subsequent criminal proceeding, were in the possession of appellant, the state of Ohio. On July 6, 2007, appellee filed a motion to dismiss the indictment, claiming appellant "improperly utilized the fruits of the Canton Police Department's Internal Affairs investigation." A hearing was held on August 8, 2007. By judgment entry filed September 19, 2007, the trial court granted appellee's motion, finding the "derivative use" or the "non-evidentiary use" of the information contained in the internal affairs file "poses a problem in this matter."
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN DISMISSING THE INDICTMENT FOR A GARRITY VIOLATION. MERE EXPOSURE TO AN INTERNAL AFFAIRS FILE BY THE PROSECUTOR WAS NOT A GARRITY VIOLATION." *Page 3 
 II {¶ 5} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN DISMISSING THE INDICTMENT AND NOT CONSIDERING EVIDENTIARY METHODS TO HANDLE THE ALLEGEDGARRITY VIOLATIONS."
 I, II {¶ 6} Appellant claims the trial court erred in dismissing the indictment for a Garrity violation, and in not considering evidentiary methods to handle the alleged violation. We agree in part.
 GARRITY VIOLATION {¶ 7} In Garrity v. New Jersey (1967), 385 U.S. 493, the United States Supreme Court reviewed a case wherein police officers being investigated were given the choice to either incriminate themselves or forfeit their jobs under a New Jersey statute dealing with forfeiture of employment, tenure, and pension rights of persons refusing to testify based on self-incrimination grounds. The officers chose to make confessions, and some of their statements were used to convict them in subsequent criminal proceedings. The officers argued their confessions were coerced because if they failed to cooperate, they could lose their jobs. In answering the question as to "whether a State, contrary to the requirement of the Fourteenth Amendment, can use the threat of discharge to secure incriminatory evidence against an employee," theGarrity court held the following at 500:
 {¶ 8} "We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal *Page 4 
proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic."
 {¶ 9} Five years later, the United States Supreme Court inKastigar v. United States (1972), 406 U.S. 441, 442, reviewed the following question:
 {¶ 10} "[W]hether the United States Government may compel testimony from an unwilling witness, who invokes the Fifth Amendment privilege against compulsory self-incrimination, by conferring on the witness immunity from use of the compelled testimony in subsequent criminal proceedings, as well as immunity from use of evidence derived from the testimony."
 {¶ 11} The Kastigar court at 460 held the following:
 {¶ 12} "`Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.' [Murphy v. Waterfront Commission ofNew York Harbor (1964)] 378 U.S. [52], at 79 n. 18, 84 S.Ct, at 1609.
 {¶ 13} "This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony."
 {¶ 14} In State v. Conrad (1990), 50 Ohio St.3d 1, 4, the Supreme Court of Ohio followed the Kastigar holding and stated the following: *Page 5 
 {¶ 15} "In Kastigar, the United States Supreme Court dealt with an immunity statute similar to R.C. 101.44, viz., Section 6002, Title 18, U.S. Code, and reviewed its constitutionality with respect to the Fifth Amendment protection against self-incrimination. Therein, the court essentially held, inter alia, that the purpose of a statute granting use immunity or derivative use immunity is to leave the witness and the prosecuting authorities in substantially the same position as if the witness had claimed the Fifth Amendment privilege. Id. at 457. In line with such purpose, the Kastigar court established a two-prong test that the prosecution must satisfy where a witness makes the claim that his or her immunized testimony was used: (1) the government must denyany use of the accused's own immunized testimony against him or her in a criminal case; and (2) the government must affirmatively prove that all of the evidence to be used at trial is derived from sources wholly independent of immunized testimony. Id. at 460-462."
 {¶ 16} The Conrad court concluded the following at syllabus:
 {¶ 17} "Where, in obtaining an indictment from the grand jury, the prosecution uses compelled testimony of a witness immunized pursuant to R.C. 101.44, and where the right of immunity accorded such compelled testimony has not been waived by the witness under the guidelines set forth in R.C. 101.44, any indictment issued against the witness as a result of such grand jury proceedings must be dismissed. (Kastigar v.United States [1972], 406 U.S. 441, and New Jersey v. Portash [1979],440 U.S. 450, followed.)" *Page 6 
 {¶ 18} In its judgment entry filed September 19, 2007, the trial court acknowledged, "[i]t is this `non evidentiary' use that is hard to define and which is most important in our case." The trial court then noted the following at 7:
 {¶ 19} "There are two Federal decisions which reflect the differing opinions on the level of scrutiny non-evidentiary use of immunized testimony should receive. In U.S. v. McDaniels, 482 F2d 305 (C.A. 8 1973), the Court in citing Kastigar placed a `heavy burden' on the government and enforced a strict interpretation upon the government. InU.S. v. Semkius, 712 F2d 891 (C.A. 3 1983), the Court refused to follow the strict interpretation of McDaniels and held that Kastigar only prohibits evidentiary use of immunized testimony."
 {¶ 20} The trial court considered the Garrity, Kastigar, Conrad,McDaniels, and Semkius holdings, as well as numerous other cases and a law review article, and concluded the following:
 {¶ 21} "I believe United States v. McDaniels is the appropriate measure under which to judge the issue before me. Because of the power and resources of the State, the conduct as it relates to the non-evidentiary use of immunized testimony is subject to extensive scrutiny. Under that test, set forth in State v. Conrad, I find that the State did use the accused' (sic) own testimony against him, and they failed to affirmatively prove that all the evidence to be used at trial is derived from sources wholly independent of the immunized testimony."
 {¶ 22} Appellant argues any evidence it had was derived from other sources independent of appellee's Garrity statement. We disagree with this argument. *Page 7 
 {¶ 23} As noted by the trial court throughout its judgment entry, the following facts are not in dispute:
 {¶ 24} 1) Appellant was aware of the internal affairs investigation and appellee's Garrity statement at the time of the grand jury proceeding. During the proceeding, Canton City Lieutenant David Davis acknowledged the existence of the statement, but refused to divulge the statement's contents.
 {¶ 25} 2) A witness, Vince Van, was disclosed by appellee during theGarrity interview.
 {¶ 26} 3) The investigating officers from the Perry Township Police Department did not have any information about Mr. Van from their investigations. August 8, 2007 T. at 7-10.
 {¶ 27} 4) The assistant prosecutor assigned to the case, Joseph Vance, received the entire internal affairs file including the Garrity
statement after the September 15, 2006 felony arraignment hearing or sometime between July 24, 2006 and September 20, 2006. August 8, 2007 T. at 21-23.
 {¶ 28} 5) Pursuant to appellee's Garrity interview wherein he named Mr. Van as a witness, Lieutenant Davis interviewed Mr. Van on July 24, 2006, and taped the conversation.
 {¶ 29} 6) Appellant stipulated to the fact that Mr. Van was unknown to the state prior to the Garrity interview. August 8, 2007 T. at 31.
 {¶ 30} We concur with the trial court's determination that the first prong of Kastigar has not been met: "the government must denyany use of the accused's own immunized testimony against him or her in a criminal case." Conrad, supra. The state *Page 8 
cannot deny the use of appellee's immunized statement in the criminal case. As the trial court concluded, appellant failed to establish that its knowledge of Mr. Van could be derived from any other source wholly independent of appellee's Garrity statement. There was no evidence of any wholly independent source that could have identified Mr. Van. In fact, after the Garrity interview on July 21, 2006 at 9:00 a.m., Lieutenant Davis took a statement from one Tina Ogle at 13:12 p.m. and attempted to identify Mr. Van (information contained in sealed documents).
 {¶ 31} Upon review, we concur with the trial court's analysis of aGarrity violation. OTHER EVIDENTIARY METHODS TO HANDLE THEGARRITY VIOLATION
 {¶ 32} Appellant claims the trial court erred in determining the appropriate remedy was to dismiss the indictment.
 {¶ 33} In Conrad, supra, the privileged statement was presented to the grand jury. In the case sub judice, the grand jury testimony establishes appellee's Garrity statement was not used to obtain the indictment.
 {¶ 34} The problematic area in this case is that appellant undoubtedly has the benefit and therefore the use of appellee's Garrity statement post-indictment. As the trial court noted to the prosecutor, "you can't unring the bell, you can't take it out of your mind, although many people have argued you should have had a lobotomy a long time ago, but you haven't had it so you can't take it out of your mind." August 8, 2007 T. at 34. In other words, appellant cannot erase the knowledge of appellee's defense and the existence of Mr. Van.
 {¶ 35} The trial court struggled with the appropriate remedy and determined dismissal of the indictment was the only alternative. We understand the trial court's *Page 9 
angst, but conclude the dismissal of the indictment was not the appropriate remedy. We so find because the information garnered from appellee's Garrity statement was not used to procure the indictment as in Conrad.
 {¶ 36} In addition, we note that generally when a statement is suppressed, the appropriate remedy is to exclude the statement and any information derived therefrom, which would include Mr. Van as a witness. However, this also is not the appropriate remedy in the case sub judice. First, appellee's Garrity statement was never available to appellant for use at trial and secondly, Mr. Van is a possible witness for the defense. Any exclusion of Mr. Van at trial could potentially impact appellee's defense and trial strategy.
 {¶ 37} We find the appropriate remedy is to purge appellant's file of appellee's Garrity statement, the entire internal affairs file, and any references to Mr. Van. In addition, we order the exclusion of Lieutenant Davis as a witness. Further, we order the trial court to appoint a visiting prosecutor from outside of Stark County to try the matter. We order an out-of-county prosecutor because the prosecutor for the Massillon Municipal Court conducted the preliminary hearing. We do not know, nor will we speculate, as to that office's exposure to the internal affairs file.
 {¶ 38} The assignments of error are denied as to a Garrity violation, but granted as to the dismissal of the indictment as the appropriate remedy. The case is re-instated pursuant to the guidelines of this opinion. *Page 10 
 {¶ 39} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed in part, reversed in part and remanded.
Farmer, J. Gwin, J. concur and Hoffman, P.J. concurs in part and dissents in part.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed in part and reversed in part, and the matter is remanded to said court for further proceedings consistent with this opinion. Costs to appellant. *Page 11