THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v*. JACKSON, APPELLEE AND CROSS-APPELLANT.

[Cite as *State v. Jackson*, 125 Ohio St.3d 218, 2010-Ohio-621.]

*In a criminal proceeding against a public employee, the state may not make direct or derivative use of the employee's statement that was compelled under threat of the employee's removal from office ("Garrity statement") — The state makes derivative use of a Garrity statement when the prosecutor presents to the grand jury testimony from a witness to a Garrity statement — The state makes derivative use of a Garrity statement when the prosecutor reviews a Garrity statement in preparation for trial — When the state fails to prove that it did not make any use of a Garrity statement in obtaining an indictment, the indictment must be dismissed.*

(No. 2008-1499 — Submitted September 29, 2009 — Decided March 3, 2010.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Stark County, No. 2007CA00274, 2008-Ohio-2944.

_____

**LANZINGER, J.**

{¶ 1} This case concerns a public employee's statement given during an internal investigation under the threat of the employee's termination from office, a so-called *Garrity* statement. *Garrity v. New Jersey* (1967), 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562. We are asked to determine whether the *Garrity* statement was "used" by the state in a later prosecution of the public employee and, if so, the consequences of that use.

## I. Case Background

{¶ 2} Anthony Jackson, appellee and cross-appellant, was on administrative leave from the Canton Police Department when he was involved in

an incident that eventually led to his indictment for possession of a firearm in a bar. On May 30, 2006, Sergeant Jon Roethlisberger of the Perry Township Police Department responded to a call about a fight at Lew's Tavern in Perry Township. Jackson and another person were involved, but neither wished to pursue criminal charges. While talking to a bar patron on the night of the incident, Roethlisberger learned that Jackson had possessed a firearm inside the tavern.

{¶ 3} Lieutenant David Davis investigated the incident on behalf of the Canton Police Department's Internal Affairs Unit. As part of this internal investigation, Davis ordered Jackson to submit to an interview and make a statement. Davis gave Jackson a document titled "*Garrity* Warning" before this interview. The warning stated:

{¶ 4} "This questioning concerns administrative matters relating to the official business of the Canton Police Department. During the course of this questioning, if you disclose information which indicates that you may be guilty of criminal conduct, neither your self-incriminating statements nor the fruits of any self-incriminating statements you make will be used against you in any criminal legal proceedings. Since this is an administrative matter and any self-incriminating information you may disclose will not be used against you in a court of law, you are required to answer my questions fully and truthfully. * * * If you refuse to answer all my questions, this in itself is a violation of the rules and procedures of the department, and you will be subject to separate disciplinary action."

{¶ 5} In other words, the police department assured Jackson that neither his statement nor its "fruits" would be used later in any criminal proceeding.

{¶ 6} Jackson gave detailed answers to questions regarding the May 30, 2006 Lew's Tavern incident (the "*Garrity* statement"). He also disclosed the name of a potential witness, Vince Van. The state acknowledges that no one connected to the investigation had previously been aware that a person named

2

Vince Van was a potential witness. After Jackson answered Davis's questions, Davis continued to investigate by interviewing Van.

{¶ 7} Both Roethlisberger and Davis testified before a grand jury on August 10, 2006. The grand jury testimony, which the trial court ordered to be included under seal as part of the record, reveals that Davis testified on the propriety of an officer's carrying a firearm while on administrative leave and on the implications of administrative leave in general. When Davis was asked whether he had spoken to Jackson about the incident, he acknowledged the existence of Jackson's *Garrity* statement, but declined to divulge its contents. The grand jury returned an indictment against Jackson for possession of a firearm in a D-permit liquor establishment in violation of R.C. 2923.121(A).

{¶ 8} It is not clear from the record whether the indicting prosecutor had obtained a copy of Jackson's *Garrity* statement before the indictment was returned, but the trial prosecutor, who was not the same person as the indicting prosecutor, acknowledged that he had obtained a copy of this statement sometime between July 24 and September 20, 2006.

{¶ 9} Jackson filed a motion to dismiss,[1] arguing that the state had improperly used the fruits of his *Garrity* statement. The trial court held that Davis's testimony before the grand jury violated Jackson's Fifth Amendment rights pursuant to *Garrity*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562, because Davis had knowledge of Jackson's compelled statements. The court therefore dismissed the indictment.

{¶ 10} The Fifth District Court of Appeals agreed that Jackson's Fifth Amendment rights had been violated. *State v. Jackson*, 5th Dist. No. 2007CA00274, 2008-Ohio-2944, ¶ 31. However, the court of appeals reversed the

---

1. Although the trial court noted that motions to dismiss are not permitted in criminal cases, it nevertheless treated the motion as one that may be considered under Crim.R. 12(C).

portion of the trial court opinion that dismissed the indictment and held that Jackson's *Garrity* statement was not used to obtain the indictment but was used by the trial prosecutor after indictment. Id. at ¶ 35. The court also held that the proper remedy for the *Garrity* violation was to purge the prosecutor's files of the internal-affairs file, including the *Garrity* statement, and try the case with a new prosecutor. Id. at ¶ 37.

{¶ 11} We accepted jurisdiction over the state's appeal on the following proposition of law: "When a public employer compels an employee to give a statement under threat of removal from office, *Garrity* * * * prohibits the direct or derivative use of the statement in a subsequent criminal trial, but it does not prohibit a prosecutor's knowledge, or 'non-evidentiary' use of it." We also accepted jurisdiction over Jackson's cross-appeal on the following proposition of law: "When a public employer compels an employee to give a statement under threat of removal from office, and then subsequently provides that statement to the prosecuting attorney who is pursuing a criminal conviction against the employee, *State v. Conrad* (1990), 50 Ohio St.3d 1, 552 N.E.2d 214, requires dismissal of the case unless the prosecuting attorney can establish that the state has not made any use of the [*Garrity* statement] and that all of the evidence to be used at trial was derived from sources wholly independent of that [*Garrity* statement]." In other words, we are asked to (1) define the meaning of "use" for *Garrity* purposes and (2) clarify the remedy for a *Garrity* violation.

## II. Legal Analysis

{¶ 12} Statements such as Jackson's *Garrity* statement are compelled statements and are subject to the constitutional protections of the Fifth and Fourteenth Amendments.[2]

---

2. The Fifth Amendment to the United States Constitution states, "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." The Fifth Amendment applies to the states via the Fourteenth Amendment. The Ohio Constitution similarly provides,

### A. *Garrity v. New Jersey* and *Kastigar v. United States*

{¶ 13} In *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562, police officers being investigated for criminal activity were given a choice to either answer the questions asked during the internal investigation or forfeit their jobs. The officers chose to answer questions. Later, some of their answers were used against them in criminal proceedings. The United States Supreme Court held that the officers' confessions had been compelled because they were given the choice between forfeiting their jobs and incriminating themselves. Id. at 496-498. The court held that the protection against self-incrimination prohibits use in later criminal proceedings of statements made under threat of removal from office. Id. at 499-500.

{¶ 14} Five years later, the United States Supreme Court held that when a person is granted immunity to compel his or her testimony, that testimony and any evidence derived from it cannot be used against the declarant in a later criminal proceeding. *Kastigar v. United States* (1972), 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212. The court explained that full transactional immunity for crimes discussed in a compelled statement is broader than that which is required by the Fifth Amendment. However, to be commensurate with the Fifth Amendment, the immunity must prohibit both "use" and "derivative use" of a compelled statement. "[A grant of immunity] prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." *Kastigar* at 453. In a criminal proceeding against a public employee, the state may not make direct or derivative use of an employee's statement that was compelled under threat of the employee's removal from office.

---

"No person shall be compelled, in any criminal case, to be a witness against himself." Section 10, Article I, Ohio Constitution.

## B. Use of Compelled Statements

{¶ 15} The trial court in this case wrestled with the implications of the *Kastigar* holding: "The *Kastigar* decision seems straightforward enough when we are determining whether the government has 'used' immunized testimony as direct evidence in a case. But what does the term 'derivative use' mean; what does the court mean when it says 'barring the use of compelled testimony as an investigatory lead' * * * [?]"

{¶ 16} The federal courts have not consistently interpreted *Kastigar* regarding nonevidentiary use of a compelled statement. Compare, e.g., *United States v. McDaniel* (C.A.8, 1973), 482 F.2d 305 (requiring the government to show no nonevidentiary use of compelled statement to which prosecutor had had access) with *United States v. Byrd* (C.A.11, 1985), 765 F.2d 1524, and *United States v. Mariani* (C.A.2, 1988), 851 F.2d 595 (declining to hold that prosecutors' access to compelled statement required government to prove no nonevidentiary use).

{¶ 17} Nevertheless, the United States Supreme Court has rejected the notion that the protection offered by immunity is limited to direct use of the statement itself: "It has * * * long been settled that [the Fifth Amendment's] protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence." *United States v. Hubbell* (2000), 530 U.S. 27, 37, 120 S.Ct. 2037, 147 L.Ed.2d 24. Cases decided since *Garrity,* such as *Kastigar* and *Hubbell*, demonstrate that the "use" against which *Garrity* protects is broad, encompassing evidentiary and nonevidentiary use of any compelled statement.

{¶ 18} In Jackson's case, we must determine whether the state has met its *Kastigar* burden. "[T]he *Kastigar* court established a two-pronged test that the prosecution must satisfy where a witness makes the claim that his or her

6

immunized testimony was used: (1) the government must deny *any* use of the accused's own immunized testimony against him or her in a criminal case; and (2) the government must affirmatively prove that all of the evidence to be used at trial is derived from sources wholly independent of immunized testimony." (Emphasis sic.) *State v. Conrad* (1990), 50 Ohio St.3d 1, 4, 552 N.E.2d 214.

### 1. The Use of a *Garrity* Statement Before Indictment

{¶ 19} The state argues that Jackson's *Garrity* statement was not used in any way at the indictment phase. It contends that although Jackson's statement had disclosed the name of a previously unknown witness, the witness was never mentioned to the grand jury, and Davis explicitly declined to discuss the content of Jackson's statement. The state also notes that it is not clear that the prosecutor even had access to the internal investigatory statement before the indictment was obtained.

{¶ 20} Jackson argues that because Davis was present during the making of the *Garrity* statement and afterward became a witness before the grand jury, the statement was used to obtain the indictment. We agree. It is not the extent of the prosecutor's own knowledge of the contents of the *Garrity* statement that creates the problem here. The prosecutor chose to offer the testimony of the internal investigating officer who knew the substance of Jackson's *Garrity* statement and who used the statement to further his own internal investigation. As the trial court explained: "It is not the direct evidence that is of concern. It is the 'derivative use' or the 'non-evidentiary use' of that information which poses a problem in this matter." The state makes derivative use of a *Garrity* statement when the prosecutor presents to the grand jury testimony from a witness to the statement. We agree with the trial court's determination that Davis's testimony before the grand jury constituted derivative use of Jackson's statement by the state in violation of *Garrity*.

**{¶ 21}** When Jackson claimed that his immunized testimony was used in violation of his constitutional rights, it was the state's burden to satisfy both prongs of the *Kastigar* test: first, to deny that it had made any use of his immunized testimony, and second, to affirmatively prove that all the evidence to be used at trial was derived from wholly independent sources. Although at the *Kastigar* hearing the state denied that it had used Jackson's statement, the state did not address its derivative use of the statement by presenting to the grand jury the testimony of Davis, who witnessed the *Garrity* statement. Nor did the state affirmatively prove that it could have learned of Vince Van's existence or the contents of his statement from independent sources. The trial court emphasized the lack of information introduced at the *Kastigar* hearing concerning the conduct of the prosecutors: "[T]here was no testimony as to the interaction, if any, between the grand jury prosecutor and Lt. Davis; interaction between the grand jury prosecutor and the trial prosecutor, if any, interaction between Lt. Davis and the trial prosecutor, if any; nor when the Internal Affairs investigative file was received by the prosecutor, who read it and what they read." We therefore hold that the state has not met either prong of the *Kastigar* test.

2. The Use of a *Garrity* Statement During Trial Preparation

**{¶ 22}** The state argues that Jackson's statement was not used in any respect in preparing for trial. Vince Van, who was disclosed as a possible witness only in Jackson's *Garrity* statement, was not on the state's list of potential witnesses. Although the trial prosecutor acknowledges having had a copy of the statement, the state argues that the mere fact that the prosecutor had knowledge of the contents of the statement does not mean that the state improperly used the statement.

**{¶ 23}** Jackson emphasizes that the prosecutor not only admitted having a copy of the statement, but also acknowledged that he "had the benefit of Internal Affairs reports for the purposes of pretrial preparation."

**{¶ 24}** We share the concern of the trial court and court of appeals that the prosecutor, who admitted having reviewed Jackson's *Garrity* statement, was afforded an impermissible advantage in trial preparation. A defendant's version of events provides the prosecutor with invaluable information, including the names of witnesses, potential defenses, and other information that could influence trial strategy. In other words, the prosecutor possessed the type of information that the United States Supreme Court was most concerned with in *Kastigar*. The state makes derivative use of a *Garrity* statement when the prosecutor reviews the statement in preparation for trial.

**{¶ 25}** The state did have the opportunity to deny having used Jackson's *Garrity* statement. Nevertheless, as discussed above, the state did not affirmatively prove that all of the evidence to be used at trial was derived from wholly independent sources. We therefore hold that the prosecutor's possession of Jackson's *Garrity* statement during trial preparation constituted an improper use within the meaning of *Garrity*. In summary, we hold that the state makes derivative use of a *Garrity* statement both when the prosecutor presents to the grand jury testimony from a witness to a *Garrity* statement and when the prosecutor reviews a *Garrity* statement in preparation for trial.

**{¶ 26}** The prosecutor's use of the statement during trial preparation not only violated Jackson's constitutional rights, but also revealed that the police department broke its promise to Jackson that neither the statement nor the fruits of the statement would be used in a later criminal proceeding. When such a promise has been made to a public employee, the public employer should not provide the prosecutor with the compelled statement. When the state is free to review a *Garrity* statement, the public employer cannot ensure that the statement will not be used directly or derivatively. The public employer may run a risk of a lawsuit if it turns over a *Garrity* statement to prosecutors, for the Sixth Circuit recently held in *McKinley v. Mansfield* (C.A.6, 2005), 404 F.3d 418, that police officers

who turn over another officer's compelled statement to a prosecutor can be held liable for violating the officer's constitutional rights.  Id. at 436-439.

{¶ 27} Although the issue of liability for turning over a compelled statement is not before us, we note that a public employer can ensure that it does not violate the defendant's right against self-incrimination only by refraining from providing a compelled statement to the prosecutor when a criminal proceeding ensues.  A bright-line prohibition against providing a compelled statement to a prosecutor is both workable and practical.  First, because a prosecutor is not permitted to make any use of a compelled statement, denying the prosecutor the opportunity to view the statement will not hinder the prosecutor's ability to prepare for trial.  Second, when a defendant cannot allege that the prosecutor has made use of the statement, there is no need to conduct a time-consuming *Kastigar* hearing.  Finally, when there is no threat that a prosecutor will eventually see the contents of a compelled statement, public employees will be more willing to comply with internal investigations.

{¶ 28} The argument that denying prosecutors access to compelled statements will cause them to violate their constitutional obligation to reveal exculpatory evidence under *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, is not well taken.  Any *Garrity* statement made during an internal investigation is by definition made by the defendant, who already has knowledge of its contents.

### C. The Remedy for a Garrity Violation

#### 1. For a Violation Before Indictment

{¶ 29} In *State v. Conrad*, 50 Ohio St.3d 1, 552 N.E.2d 214, the prosecutor's use of a compelled statement was found to have tainted the defendant's indictment.  We held that "whenever compelled testimony is used against the witness who provided it, any error cannot be held harmless."  Id. at 5.  We therefore remanded the case for dismissal of the indictment.  In this case,

Jackson's statement was also used to obtain the indictment. Therefore, the trial court has correctly determined that dismissal is the appropriate remedy. When the state fails to prove that it did not make any use of a *Garrity* statement in obtaining an indictment, the indictment must be dismissed.

{¶ 30} The state has argued that when a police department assigns the same person to both the criminal investigation and the internal investigation (which it claims is often necessary in small departments), our holding that the state makes derivative use of a *Garrity* statement when the prosecutor presents testimony to the grand jury from a *Garrity*-statement witness requires the department to choose between a criminal prosecution and an internal investigation. However, a police department can always assign the internal investigation of a police officer to an officer who has not taken part in and will not take part in the criminal investigation. In the alternative, a police department can simply wait until the conclusion of criminal proceedings before conducting an internal investigation.

2. For a Violation During Trial Preparation

{¶ 31} The court of appeals held that the appropriate remedy for a *Garrity* violation after indictment was to purge the compelled statement from the prosecutor's file and to appoint a replacement prosecutor to try the case. *State v. Jackson*, 2008-Ohio-2944, ¶ 37. We find this solution unnecessary.

{¶ 32} *Kastigar* held that the proscription against using a defendant's compelled statement is analogous to the proscription against using a defendant's coerced confession. *Kastigar*, 406 U.S. at 461, 92 S.Ct. 1653, 32 L.Ed.2d 212. A coerced confession is inadmissible in a criminal trial, but does not bar prosecution. Id. If a court rules that a confession was coerced in violation of the Fifth Amendment, the confession must be suppressed. *State v. Robinson* (1990), 67 Ohio App.3d 743, 745, 588 N.E.2d 876, citing *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473. Likewise, when a trial court rules

after a *Kastigar* hearing that a prosecutor has used the defendant's compelled statement in preparation for trial after indictment, the appropriate remedy is for the trial court to suppress that statement and all evidence derived from the statement.

{¶ 33} We acknowledge that a trial court will be unable to fully suppress all impermissible knowledge gained by a prosecutor who reviews a *Garrity* statement. However, just as the exclusionary rule operates to discourage compelled confessions, which may provide the state with information otherwise unobtainable, suppression of a *Garrity* statement and its derivative evidence will discourage use of the statement in violation of the employee's Fifth Amendment rights.

### III. Conclusion

{¶ 34} For the foregoing reasons, we hold that the state failed to meet its burden to show that it did not use Jackson's *Garrity* statement either before the grand jury or during trial preparation. Because the state did not meet its burden with respect to the indictment, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court dismissing the indictment.

Judgment reversed.

MOYER, C.J., and O'CONNOR, J., concur.

PFEIFER and O'DONNELL, JJ, concur separately.

LUNDBERG STRATTON and CUPP, JJ., dissent.

_____

**O'DONNELL, J., concurring.**

{¶ 35} I concur in the majority's judgment that based upon the facts of this case, the state cannot demonstrate compliance with either *Kastigar v. United States* (1972), 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212, or *Garrity v. New Jersey* (1967), 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562. However, I write separately to emphasize that the state cannot use *any* information directly or

indirectly derived from a *Garrity* statement in a criminal proceeding against the public employee who made the statement unless the state denies any use of the immunized testimony and also affirmatively proves an independent, legitimate source for all of the evidence to be introduced at trial. In my view, if a prosecutor has reviewed a defendant's *Garrity* statement before trial and fails to carry the burden to establish an independent source for the evidence, the only appropriate remedy is dismissal of the indictment.

{¶ 36} In *Garrity*, the Supreme Court of the United States held that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that [the protection] extends to all, whether they are policemen or other members of our body politic." *Garrity*, 385 U.S. at 500, 87 S.Ct. 616, 17 L.Ed.2d 562. In *Kastigar*, the court explained that the immunity used to compel such testimony is "coextensive with the scope of the privilege against self-incrimination" and that it prohibits not only the use of compelled testimony, but also the use of any "evidence derived directly and indirectly therefrom." *Kastigar*, 406 U.S. at 453, 92 S.Ct. 1653, 32 L.Ed.2d 212. In sum, the court concluded that the grant of immunity prohibits the prosecution "from using the compelled testimony in any respect." Id.

{¶ 37} To enforce the prohibition against the use of compelled testimony, the court reaffirmed the rule set forth in *Murphy v. Waterfront Comm. of New York Harbor* (1964), 378 U.S. 52, 79, 84 S.Ct. 1594, 12 L.Ed.2d 678, fn. 18, when it imposed an affirmative burden upon the state to demonstrate that its evidence was not tainted by requiring the state to establish an independent, legitimate source for the disputed evidence. *Kastigar*, 406 U.S. at 460, 92 S.Ct. 1653, 32 L.Ed.2d 212. The court emphasized, "This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use

is derived from a legitimate source wholly independent of the compelled testimony." Id. at 460. The court recognized that its holding placed a "heavy burden" on the government to demonstrate that it obtained all of its evidence from independent sources, thereby placing a defendant facing incriminating evidence obtained through a grant of immunity in a stronger position than a defendant asserting a Fifth Amendment claim related to a coerced confession. Id. at 461.

{¶ 38} In *State v. Conrad* (1990), 50 Ohio St.3d 1, 4, 552 N.E.2d 214, this court applied *Kastigar* and held that when an accused asserts that the state has used evidence from a *Garrity* statement, "(1) the government must deny *any* use of the accused's own immunized testimony against him or her in a criminal case; and (2) the government must affirmatively prove that all of the evidence to be used at trial is derived from sources wholly independent of immunized testimony." (Emphasis sic.)

{¶ 39} As the majority acknowledges, a defendant's *Garrity* statement may provide a prosecutor with information that could lead to the discovery of additional evidence or witnesses for trial. But regardless of the evidentiary consequences, information about the defendant's theory of the case and knowledge of the defendant's own version of the events give the prosecutor an unfair advantage in conducting an investigation and planning trial strategy. *Kastigar* and *Conrad* seek to eliminate both the direct and indirect use of information obtained in violation of a defendant's constitutional right against self-incrimination by broadly proscribing *any* use of a defendant's compelled statement. Because knowledge of the information contained in a *Garrity* statement may imperceptibly influence a prosecutor's view of a case, the government cannot plausibly deny *any* use of a defendant's compelled statement when the prosecutor has read it before trial. Therefore, I would hold that when a prosecutor has reviewed a defendant's *Garrity* statement before trial and fails to

14

establish an independent source for the evidence to be used at trial, dismissal of the indictment rather than suppression of the evidence is the appropriate remedy.

PFEIFER, J., concurs in the foregoing opinion.

_____

**CUPP, J., dissenting.**

{¶ 40} *Kastigar v. United States* (1972), 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212, requires a prosecutor to prove that the material the prosecutor proposes to use as evidence against the defendant came from a source independent of the defendant's compelled statements. Because I do not share the majority's view that the state's using Lieutenant Davis, who was present when Jackson gave his compelled statement, as a grand jury witness constituted derivative use of Jackson's statement under *Kastigar*, I dissent from the majority's holding that the indictment in this case must be dismissed. See *United States v. Byrd* (C.A.11, 1985), 765 F.2d 1524, 1529 ("The government is not required to negate all abstract 'possibility' of taint").

{¶ 41} The court of appeals concluded that Jackson's compelled statement was not used to obtain the indictment. The record supports that conclusion. When Davis was asked about Jackson's statement during the grand jury proceedings, he declined to answer. By contrast, in *State v. Conrad* (1990), 50 Ohio St.3d 1, 4-5, 552 N.E.2d 214, this court held that the indictment had to be dismissed because the prosecutor had used the defendant's compelled statement to impeach her testimony before the grand jury.

{¶ 42} The majority expresses concern that the prosecutor, who possessed and had reviewed Jackson's compelled statement, was given an impermissible advantage in trial preparation. Majority opinion at ¶ 24. The court of appeals similarly noted that the state had learned of a potential witness to the alleged crime (Vince Van) through Jackson's compelled statement. But the state did not present information from Van's statement to the grand jury and did not list Van as

a trial witness. This case differs from *United States v. Hubbell* (2000), 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24, in which the defendant's testimonial act of producing extensive incriminating documents in response to a broadly worded government subpoena provided the evidence that was used to convict him of another crime. Id. at 41-43, quoting the government's brief ("It was only through respondent's truthful reply to the subpoena that the Government received the incriminating documents of which it made 'substantial use * * * in the investigation that led to the indictment' "). In this case, the record does not establish that Jackson's statement provided a " 'link in the chain of evidence needed to prosecute' " Jackson. *Hubbell*, 530 U.S. at 38, quoting *Hoffman v. United States* (1951), 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118.

{¶ 43} Consequently, neither *Kastigar* nor *Conrad* requires dismissal of the indictment in this case.

{¶ 44} Having concluded, erroneously in my view, that because Davis testified before the grand jury the indictment must be dismissed, the majority goes on to discuss its concern that the prosecutor's having read Jackson's compelled statement will give the state an impermissible advantage at trial. With regard to the evidence that the state intends to use at trial, the state must show that it has an " 'independent, legitimate source for the disputed evidence.' " *Kastigar,* 406 U.S. at 460, 92 S.Ct. 1653, 32 L.Ed.2d 212, quoting *Murphy v. Waterfront Comm. of New York Harbor* (1964), 378 U.S. 52, 79, 84 S.Ct. 1594, 12 L.Ed.2d 678, fn. 18. To the extent that any question remains about the state's trial evidence, Jackson's remedy is to move to exclude his statement and its fruits from evidence at trial.[3]

---

3. The majority, at one point in its opinion, apparently agrees that suppression of Jackson's statement and any evidence obtained therefrom is the appropriate remedy for a *Garrity* violation. Majority opinion at ¶ 32. However, the majority also states that the state makes derivative use of a *Garrity* statement when the prosecutor reviews a statement in preparation for trial, and even when the prosecutor merely has possession of the statement but does not review it. Id. at ¶ 25.

**{¶ 45}** Assuming that the state will not introduce the compelled statement or its fruits at trial and will not use the statement for impeachment at trial, the only question that remains is whether the prosecutor's exposure to the compelled statement and the internal-affairs file has directly affected the state's trial strategy (such as choice of witnesses, for example). The federal courts of appeals have taken different approaches to claims that exposure to a defendant's compelled statement may have affected the government's trial strategy. Compare *United States v. McDaniel* (C.A.8, 1973), 482 F.2d 305, 311 ("[Immunity protection] must forbid all prosecutorial use of the testimony, not merely that which results in the presentation of evidence before the jury") with *United States v. Rivieccio* (C.A.2, 1990), 919 F.2d 812, 815 ("To the extent the Government's thought process or questioning of witnesses may have been influenced by Appellant's immunized testimony, we hold that any such use was merely tangential and was therefore not a prohibited use").

**{¶ 46}** If the majority believes that the trial prosecutor in this case, who admitted to having reviewed Jackson's compelled statement, was afforded an impermissible direct advantage in trial strategy, then the court should afford the state the option of accepting the court of appeals' remedy—allowing the state to try the case without the disputed evidence and with a new trial prosecutor who has not seen any of the disputed evidence—instead of dismissing the case outright. This less drastic option also would further the majority's stated goal of discouraging the improper sharing of compelled testimony obtained in an internal-affairs investigation with the prosecution team in the related criminal proceeding. Apparently, the majority is disinclined to permit this reasonable solution as an optional remedy to the state.

**{¶ 47}** For these reasons, I dissent from the majority's decision to reinstate the trial court's dismissal of the indictment in this case.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

John D. Ferrero, Stark County Prosecuting Attorney, and Kathleen Tatarsky, Assistant Prosecuting Attorney, for appellant and cross-appellee.

Bradley R. Iams, for appellee and cross-appellant.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Judith Anton Lapp, Assistant Prosecuting Attorney, for amicus curiae, Ohio Prosecuting Attorney's Association, in support of appellant and cross-appellee.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Alexandra T. Schimmer, Chief Deputy Solicitor General, and David M. Lieberman, Deputy Solicitor, for amicus curiae, Ohio Attorney General, in support of appellant and cross-appellee.

Joseph Martuccio, Canton Law Director, and Kevin R. L'Hommedieu, Assistant Law Director; Schottenstein, Zox & Dunn Co., L.P.A., Stephen L. Byron, and Stephen J. Smith; John Gotherman; Robert L. Berry Co., L.P.A., and Robert L. Berry; and Pericles G. Stergios, Massillon Law Director, for amici curiae, city of Canton, Ohio Municipal League, city of Massillon, and Buckeye State Sheriffs' Association, in support of appellant and cross-appellee.

Crabbe, Brown & James, L.L.P., Larry H. James, Christina L. Corl, and Lindsay L. Ford; and Paul Cox, for amici curiae National Fraternal Order of Police and Fraternal Order of Police of Ohio, Inc., in support of appellee and cross-appellant.

Mary Lou Sekula, urging affirmance for amicus curiae Canton Police Patrolman's Association, in support of appellee and cross-appellant.

Aaron Nisenson, for amicus curiae International Union of Police Associations, AFL-CIO, in support of appellee and cross-appellant.

_____