[Cite as *State v. Flynn*, 2024-Ohio-941.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellant,

v.

BRIAN FLYNN,

Defendant-Appellee.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 23 MA 0076

---

Criminal Appeal from the
Youngstown Municipal Court, Mahoning County, Ohio
Case Nos. 2022 CRB 1356Y – 2022 CRB 1369Y

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. James Vivo* and *Atty. Adam V. Buente*, Youngstown City Law Department, for Plaintiff-Appellant and

*Atty. Keith A. Washburn* and *Atty. Kay E. Cremeans*, Fraternal Order of Police, for Defendant-Appellee.

Dated:  March 13, 2024

**HANNI, J.**

{¶1}     Plaintiff-Appellant, the State of Ohio, appeals from a Youngstown Municipal Court judgment dismissing 14 misdemeanor counts of dereliction of duty against Defendant-Appellee, Brian Flynn.

{¶2}     At all relevant times, Flynn was employed by the Youngstown Police Department (YPD) as a lieutenant.  Flynn's job duties included investigating potential Internet Crimes Against Children (ICAC).  Suspicions arose that Flynn was not properly following procedures regarding these investigations.  These suspicions lead to an Internal Affairs (IA) investigation by the YPD.  Lieutenant Brian Butler, a staff inspector for the YPD, was assigned to handle the IA investigation.

{¶3}     In February 2021, Lt. Butler gave Flynn a "*Garrity*" notice.  In the next month, Flynn made several statements in the IA investigation, which were reduced to writing (the *Garrity* material).  The *Garrity* material, along with other material that Lt. Butler compiled, was delivered to Attorney Jeffrey Moliterno, an assistant prosecutor with the Youngstown City Law Director's Office, where it remained for some time.

{¶4}     The Youngstown City Law Director at the time, Attorney J. Jeffrey Limbian, arranged for an outside agency to conduct a criminal investigation into Flynn's actions, separate from the IA investigation.  He contracted with Detective Brian Breeden from the Summit County Sheriff's Office to investigate the matter.  In reviewing material provided to him from the Law Director's Office, Det. Breeden identified some *Garrity* materials, which he kept separate from his criminal investigation.

{¶5}     On October 24, 2022, 14 complaints were filed against Flynn in the Youngstown Municipal Court.  The complaints alleged Flynn was the designated contact person within the YPD to receive, assess, and act upon "Cyber Tips" from the ICAC Data System and although Cyber Tips were received, Flynn intentionally failed to review, assess, and act upon them.  The complaints further alleged Flynn intentionally instructed subordinate officers to ignore and disregard the Cyber Tips.  Each complaint charged Flynn with one count of dereliction of duty, a second-degree misdemeanor in violation of R.C. 2921.44(B).  The affidavit of Attorney Limbian accompanied each complaint.

{¶6}     This case concerns the potential use of "*Garrity*" materials.

Case No. 23 MA 0076

{¶7} A *Garrity* statement is "a public employee's statement given during an internal investigation under the threat of the employee's termination from office[.]" *State v. Jackson*, 125 Ohio St.3d 218, 2010-Ohio-621, 927 N.E.2d 574, ¶ 1, citing *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). The United States Supreme Court has held that the protection against self-incrimination prohibits the use of statements made under threat of removal from office in later criminal proceedings. *Id.* at ¶ 13, citing *Garrity*, at 499-500.

{¶8} The Supreme Court later held that when a person is granted immunity to compel his or her testimony, that testimony and any evidence derived from it cannot be used against the declarant in a later criminal proceeding. *Id.* at ¶ 14, citing *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The State may not make direct or derivative use of an employee's statement that was compelled under threat of the employee's removal from office in a subsequent criminal proceeding. *Id.*

{¶9} On February 23, 2023, Flynn filed motions for a *Kastigar* hearing and orders prohibiting any use of *Garrity* statements/evidence and an alternative motion to dismiss the charges against him.

{¶10} The trial court held a hearing on Flynn's motions on May 4, 2023, where it heard testimony from Det. Breeden and Lt. Butler. The trial court found there was no evidence to contradict Det. Breeden's testimony that he did not use any *Garrity* materials in conducting his criminal investigation or in reaching his conclusions. The court noted, however, there was no evidence presented by either party to indicate whether the *Garrity* materials were or were not used in the criminal investigation by individuals other than Det. Breeden. It also stated there was no evidence presented as to whether *Garrity* materials were or were not used by the State in deciding to charge Flynn nor was there any evidence presented as to whether *Garrity* materials have or have not been used by the State in the preparation of the criminal case for trial. The court found the State did not prove that the evidence it intended to use at trial was derived from legitimate sources wholly independent of the *Garrity* materials.

{¶11} Based on its findings, the trial court found that Det. Breeden was aware of the *Garrity* materials but that he did not use them in completing his part of the criminal investigation. However, the court also found that the State failed to affirmatively prove

that no other person was involved with the criminal investigation. And furthermore, the court found the evidence clearly showed that the *Garrity* materials were in the possession of the Law Director's Office for months prior to the charges being filed. Thus, the court found that the State failed to affirmatively establish that the *Garrity* materials were not used in the criminal investigation nor in the Law Director's decision to file charges. Additionally, it found the State did not affirmatively prove that the evidence it intended to use at trial was derived from legitimate sources wholly independent of the *Garrity* materials. Accordingly, the court dismissed the charges against Flynn.

**{¶12}** The State filed a timely notice of appeal on July 5, 2023. It now raises three assignments of error.

**{¶13}** The State's first assignment of error states:

THE TRIAL COURT ERRED IN ITS APPLICATION OF THE *GARRITY/KASTIGAR* PRONGS BECAUSE THE STATE OF OHIO SUCCESSFULLY PRODUCED SUFFICIENT EVIDENCE NECESSARY TO PERMIT THE CASE TO PROCEED TO TRIAL.

**{¶14}** Here, the State asserts that it met its burden of proof at the *Garrity* hearing. It claims it proved by way of Det. Breeden's testimony that the evidence he compiled was derived from legitimate, independent sources. The State asserts that Det. Breeden's testimony was itself the required denial of the use of *Garrity* material. And it points to Det. Breeden's testimony that he knew to keep his investigation separate from any internal investigation and that he did not use any personnel information. Finally, the State notes that the trial court found there was no evidence to contradict Det. Breeden's testimony that he did not use any *Garrity* materials in his investigation and there was no evidence indicating whether *Garrity* materials were used by someone other than Det. Breeden.

**{¶15}** Quoting *State v. Conrad*, 50 Ohio St.3d 1, 4, 552 N.E.2d 214 (1990), the Ohio Supreme Court has explained the relevant test:

"[T]he *Kastigar* court established a two-prong[ed] test that the prosecution must satisfy where a witness makes the claim that his or her immunized testimony was used: (1) the government must deny *any* use of the accused's own immunized testimony against him or her in a criminal case;

and (2) the government must affirmatively prove that all of the evidence to be used at trial is derived from sources wholly independent of immunized testimony." (Emphasis sic.)

*Jackson*, 2010-Ohio-621, at ¶ 18. The Court went on to hold that: "the state makes derivative use of a *Garrity* statement both when the prosecutor presents to the grand jury testimony from a witness to a *Garrity* statement and when the prosecutor reviews a *Garrity* statement in preparation for trial." *Id*. at ¶ 25. Again citing *Conrad*, the Court stated that when compelled testimony is used against the witness who provided it, any error cannot be harmless. *Id*. at ¶ 29, citing *Conrad*, at 5. The remedy is dismissal of the indictment. *Id*. "When the state fails to prove that it did not make any use of a *Garrity* statement in obtaining an indictment, the indictment must be dismissed." *Id*.

**{¶16}** In the present case, Flynn was charged with misdemeanors, not felonies. So there was no indictment. But *Garrity* and *Kastigar* apply equally to misdemeanors. *See State v. Kirk*, 12th Dist. Clinton No. CA2009-09-015, 2010-Ohio-1287; *State v. Brocious*, 2d Dist. Clark No. 2002CA89, 2003-Ohio-4708. The burden then was on the State at the hearing to prove that it did not use any *Garrity* materials in deciding to file the misdemeanor charges against Flynn or in preparation of trial.

**{¶17}** At the hearing, Det. Breeden testified as follows. In 2021, Det. Breeden's supervisor assigned him to investigate the matter regarding Flynn after his supervisor was contacted by the YPD. (Tr. 20-21). The detective testified that when his investigation involves a police officer, he proceeds in a manner so as to avoid using information gathered in the officer's personnel or disciplinary file. (Tr. 22-23). He stated that his criminal investigation must be conducted separately from any internal investigation so as to comply with *Garrity*. (Tr. 23).

**{¶18}** In investigating Flynn, Det. Breeden stated that he requested certain information from the YPD. In an email "dump", he did receive an email between internal affairs and Flynn. (Tr. 25). Det. Breeden testified that he disregarded that email because he could not include it in his investigation. (Tr. 25). He compiled a binder of all of the information he obtained during his investigation. (Tr. 25). The detective delivered that binder to the YPD. (Tr. 26). Det. Breeden testified that he was fully aware of the inability of the State to use Flynn's IA investigation in a criminal case and that he prepared his

binder relating to the criminal case independently of any of the prohibited areas of information.  (Tr. 27).

**{¶19}**  As part of his investigation, Det. Breeden requested from the YPD all emails and communications related to ICAC and Flynn.  (Tr. 36).  A few of the emails he was provided in response contained *Garrity* material.  Exhibit C was an email between Flynn and Flynn's FOP representative discussing responses to the IA questions.  (Tr. 31-32). Exhibit E was an email from Lt. Butler to Flynn containing follow-up questions in the IA investigation.  (Tr. 33-34).  Exhibit I was an email from Flynn to Lt. Butler containing the answers to the lieutenant's IA questions.  (Tr. 38).  Det. Breeden saw and disregarded each of these *Garrity* emails.  (Tr. 32, 34, 38, 40).  When Det. Breeden returned the records he had received to the Youngstown City Law Department, he advised the law director that there were some items within his records request that he believed were IA related and which the detective disregarded.  (Tr. 40).

**{¶20}**  Lt. Butler also testified.  He stated that he runs the IA division at the YPD. Lt. Butler testified that Flynn was given his *Garrity* rights on February 23, 2021.  (Tr. 60). He stated that at some point during his investigation, the Youngstown City Law Department asked him for a copy of his IA file dealing with Flynn.  (Tr. 60).  In response, Lt. Butler provided the law department with a binder containing his IA investigation.  (Tr. 61). The lieutenant stated that the binder included Flynn's answers to IA questions, in other words, *Garrity* materials.  (Tr. 61, 71).  He could not remember the date he provided the binder to the law department but he testified the binder remained with the law department for months before he retrieved it.  (Tr. 61).  Lt. Butler stated that he gave the binder to the law department at the request of law department attorney, Jeff Moliterno, who was representing the city at a pre-disciplinary meeting with Flynn.  (Tr. 62).  Atty. Moliterno's supervisor was Atty. Limbian, the city law director.  (Tr. 62).

**{¶21}**  The evidence presented supports the trial court's findings.  It revealed the following.

**{¶22}**  Lt. Butler conducted the IA investigation.  Det. Breeden conducted the criminal investigation.  Thus, the two investigations were conducted independently from each other.  Det. Breeden became aware of the existence of *Garrity* materials obtained during the IA investigation, but he was able to put them aside and not consider them.  The

trial court believed Det. Breeden's testimony that he did not consider the *Garrity* material in conducting his investigation.

**{¶23}** But "*Jackson*, *Conrad*, and *Kastigar* specifically prohibit any use by the prosecutor of a witness' immunized statement." *Kirk*, 2010-Ohio-1287, ¶ 18. Prior to the criminal charges being filed, Lt. Butler turned over his binder containing all of the information obtained during his IA investigation, including the *Garrity* materials, to the Youngstown City Law Department. Turning over the *Garrity* materials from the IA investigation to the law department created a substantial burden for the City to overcome to comply with the *Kastigar* test. The city law department, at the request of one of its attorneys, was in possession of the IA binder including the *Garrity* materials for quite some time. When Lt. Butler was asked how long the binder was in the possession of the city law department, he responded: "You know, I want to say months. But I, it seemed like a longer period. To my memory it seemed like a very long time." (Tr. 62). And each of the misdemeanor complaints filed against Flynn was accompanied by a probable cause affidavit of the city law director.

**{¶24}** The State bears the burden to prove that "no use was made of the immunized statement[.]" *Id*. In this case, the State was unable to meet its burden. While the State was able to prove that Det. Breeden did not use the *Garrity* materials, it did not offer any evidence, let alone prove, that the *Garrity* materials were not used by the law department in deciding to file the complaints against Flynn. The *Garrity* materials were in the possession of the law department for a significant amount of time and the law director is the one who filed the probable cause affidavits to charge Flynn. The State could not explain exactly how long the *Garrity* materials were with the city law department or how those materials were protected from infiltrating the criminal investigation. In light of these facts, the State had to present evidence demonstrating that it did not use the *Garrity* material at all in deciding to file charges against Flynn. The burden was on the State and it did not meet this burden

**{¶25}** Accordingly, the State's first assignment of error is without merit and is overruled.

**{¶26}** The State's second assignment of error states:

THE TRIAL COURT ERRED IN DISMISSING THE CHARGES AGAINST FLYNN BECAUSE THE LAW DEPARTMENT'S MERE POSSESSION OF THE *GARRITY* MATERIALS DID NOT, IN ITSELF, CONSTITUTE A *GARRITY* VIOLATION.

**{¶27}** The State claims the fact that it possessed both *Garrity*-protected material and an independent investigation report at the same time is not dispositive of whether a *Garrity* violation occurred. Instead, it claims the court was to look to whether it *used* the immunized material.

**{¶28}** The State is correct so far as the fact that it possessed *Garrity* materials is not dispositive of whether a *Garrity* violation occurred. But as discussed in the first assignment of error, the burden was on the State to prove that it did not use the *Garrity* materials in its possession. And the State did not offer any evidence to prove this. It only presented evidence that Det. Breeden did not use the *Garrity* materials in his investigation. The burden was not on Flynn to show that the State used the *Garrity* materials.

**{¶29}** Accordingly, the State's second assignment of error is without merit and is overruled.

**{¶30}** The State's third assignment of error states:

THE TRIAL COURT ERRED BECAUSE ITS DISMISSAL OF THE CHARGES IS INCONSISTENT WITH THE APPLICATION OF FIFTH AMENDMENT PROTECTIONS.

**{¶31}** The State argues here that the trial court erred in dismissing the indictment after it found that neither party provided evidence that a *Garrity* violation in fact occurred. It asserts there was no evidence that the internal affairs investigation was used to procure the charges against Flynn. Thus, the State contends dismissal of the charges was inconsistent with the application of the Fifth Amendment.

**{¶32}** The State's argument here takes issue with the fact that the trial court found neither party provided evidence that a *Garrity* violation in fact occurred.

**{¶33}** In examining a *Garrity* case, the Second District set out the protections of the Fifth Amendment:

"The Fifth Amendment provides that no person 'shall be compelled in any criminal case to be a witness against himself.' The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."

*State v. Schimmel*, 2017-Ohio-7747, 85 N.E.3d 774, ¶ 16 (2d Dist.), quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), citing *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924).

**{¶34}** And the Ohio Supreme Court has held that when the State fails to prove that it did not make any use of a *Garrity* statement in obtaining an indictment, dismissal is the appropriate remedy. *Jackson*, 2010-Ohio-621, ¶ 29. Thus, dismissal of the charges against Flynn in this case was the proper remedy.

**{¶35}** Accordingly, the State's third assignment of error is without merit and is overruled.

**{¶36}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

[Cite as *State v. Flynn*, 2024-Ohio-941.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Youngstown Municipal Court, Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.


## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**